LAND, J.
Defendant was indicted for the murder of one Mitchell Jackson, was found guilty of manslaughter, and was sentenced to imprisonment at hard labor, for the term of seven years.
Defendant has appealed, and relies for reversal on a single bill of exception.
On the trial the defendant offered to prove that the deceased had shot five other negroes, *79 and was a bad and dangerous man. Tbe testimony was ruled out by tbe trial judge for the reason that no overt act had been established.
Philip Matthews was the only eyewitness to the homicide, and he testified that he and the deceased had gone hunting, and were returning along the road toward home when the shooting took place.
This witness stated that the defendant fired from the inside of a field; that there was a fence between the parties and defendant was standing by a hickory snag; that the first shot struck the deceased in the left side of the head and the second shot struck him in the right side; that after the shooting the defendant got over the fence and came to where the deceased was lying, and stayed there until the wife of the deceased and one Isaiah Scott arrived.
This witness further stated that “the first he knew the defendant shot the deceased from the field.”
In his per curiam the judge said that Philip Matthews stated that the first intimation he and the deceased had of the presence of the defendant was the firing of the first shot; that the accused reloaded his gun, which was a single-barreled breechloader and fired another shot into the side of the deceased; that the wounds were made with buck shot.
Isaiah Scott and Polly Williams testified that they saw the defendant shortly after the shooting, and .that he told them that the deceased had not seen him, that he had not said a word to the deceased, and that he had got one and would get the other. A witness for the state testified that the defendant and the deceased had a fight a few days before the homicide, and that the deceased shot at the defendant.
Defendant testified substantially that the deceased had shot at him a few days previously ; that he was afraid of the deceased and had avoided him; that he was coming down the road and he saw the deceased and Philip Williams coming meeting him and they both had their guns, that the deceased had a pan of potatoes, and that as soon as he saw him, he threw down the potatoes, and started to shoot the defendant; that the deceased had raised his gun and was starting to level it at defendant, when the latter fired and “seemed to knock the deceased crazy”; that the deceased kept doing as if he were trying to shoot the defendant, who reloaded his gun and shot the deceased again, who thereupon fell to the ground.
A Mr. Sam Carter, a storekeeper of the vicinity, went to the scene of the shooting with the boy, Philip Williams, who pointed out the place whence the shots were fired. Mr. Carter found no tracks at the spot indicated and no bullet marks on .the intervening rail fence. This witness further stated that Philip Williams said that he ran off when the first shot was fired.
Mr. Carter visited the scene of the shooting with the defendant, who pointed out the spot in the road where he was standing when he fired the shots. The witness found gun wads at about the right distance between said spot and the place where the deceased fell. The testimony of Philip Williams that the deceased was shot in the left side of the head, which fact is not disputed, seems to corroborate his statement that the first shot came from the field on the side of the road.
This conclusion is re-enforced by the statement of two witnesses that the accused declared that the deceased did not see him.
The district judge was of opinion that the evidence showed that the deceased was-shot from ambush, and that the testimony of the accused as to the overt act was not entitled to any credit.
The jury must have been of the same opinion.
In a similar case, we recently held that the hostile demonstration constituting the overt act, must be proved to the satisfac *81 "tion of the trial judge, and that while we will review his ruling when all the evidence touching the question of overt act is before us, the evidence must be clear and convincing to authorize our interference. State v. Feazell (La. No. 15,922) 116 La. 264, 40 South. 698. We see no good reason for holding that the district judge has abused •the discretion vested in him'.
Judgment affirmed.