(68 South. 422)

No. 20962.

STATE v. BOUDREAUX.

(April 12, 1915.    Rehearing Denied May 10, 1915.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW ☞274, 1149 — PLEA OF GUILTY—APPLICATION TO WITHDRAW—DISCRETION—APPEAL. ·

It is discretionary with the trial court to permit or to refuse to permit a plea of not guilty to be withdrawn, in order to enable defendant to set up a dilatory or formal defense, and his ruling will not be disturbed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 632, 633, 3039-3043, 3058; Dec. Dig. ☞274, 1149.]

2. CRIMINAL LAW ☞1111—APPEAL—RECORD — STATEMENT PER CURIAM — CONCLUSIVENESS.

Where counsel for defendant in a criminal case take issue with the trial judge, upon a question of fact, concerning which the record is otherwise silent, the statement per curiam, attached to the bill of exception, will be accepted by this court as conclusive.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2894-2896; Dec. Dig. ☞ ·1111.]

3. CRIMINAL LAW ☞1092 — APPEAL — RECITALS IN STATEMENT — REPRIMANDING COUNSEL.

Where, upon its face, a bill of exception, reserved in a criminal case, shows that the trial judge has gone rather far in reprimanding counsel, it is desirable that the statement of the judge should set forth the reason for his action.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2803, 2829, 2834-2861, 2919; Dec. Dig. ☞1092.]

4. CRIMINAL LAW ☞1093—APPEAL—PRESENTATION FOR REVIEW—BILL OF EXCEPTIONS.

The materiality of testimony sought to be elicited in chief from a defendant, on trial for murder, as to whether, several hours before the killing, he had any idea that he was going to kill the deceased, may depend upon a variety of circumstances, and a bill, which merely recites that an objection to such testimony was sustained, discloses no reversible error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2828-2833, 2919, 2920; Dec. Dig. ☞1093.]

5. HOMICIDE ☞190—EVIDENCE—THREATS.

The question, whether the trial judge, in a murder case, is bound to allow evidence of prior threats to go to the jury, together with any evidence, however flimsy and incredible, in his opinion, to the effect that, by reason of the action of the deceased, at the time of the killing, the defendant had reasonable cause to believe, and did believe, that he was threatened by the deceased with, and was in danger of, death or great bodily harm, is answered in the negative by the established jurisprudence of this court; and we adhere to that jurisprudence.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 399-413; Dec. Dig. ☞190.]

6. CRIMINAL LAW ☞1093 — PRESENTATION FOR REVIEW — EXCLUSION OF EVIDENCE — BILL OF EXCEPTIONS.

Where, to a bill of exception, reserved, in a murder case, to the exclusion of testimony, sought to be introduced to show prior threats by the deceased, there is attached what appears to be a fragment of the testimony given by the defendant to prove an overt act, committed by the deceased, at the time of the killing, but no other testimony adduced on the trial, this court is not placed in a position intelligently to review the immediate question sought to be presented by the bill.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2828-2833, 2919, 2920; Dec. Dig. ☞1093.]

O'Niell and Provosty, JJ., dissenting.

Appeal from Fifteenth Judicial District Court, Parish of Jefferson Davis; Alfred M. Barbe, Judge.

O. L. Boudreaux was convicted of manslaughter, and appeals. Affirmed.

Robira & Miller, of Jennings, for appellant. R. G. Pleasant, Atty. Gen., T. A. Edwards, Dist. Atty., of Lake Charles (G. A. Gondran, of New Orleans, of counsel), for the State.

MONROE, C. J. Defendant prosecutes this appeal from a conviction of, and sentence for, manslaughter, under an indictment for murder.

The record discloses a bill of exception to the refusal of the court to permit defendant to withdraw the plea of not guilty, in order to enable him to file motions to quash the indictment and the de talibus venire, and two other bills, to the refusal to permit him to file those motions.

[1] His counsel now state, in their brief, that bill No. 3 (which relates to the venire) is abandoned. The motion to quash the indictment sets out, as the ground relied on, ·

that the grand jury assembled in a large room which is separated from the court-room by a thin partition, and that they might have been overheard by persons in the court-room, and might, themselves, have heard conversations between the persons so situated. It is not suggested that any such overhearing actually took place.

"It is wholly in the discretion of the court to permit a plea of any sort to be withdrawn. * * * Thus, it is discretionary with the court to permit or refuse to permit a plea of not guilty to be withdrawn. * * * The rule applies also to pleas of guilty. * * * " 12 Cyc. 350f; State v. Williams, 45 La. Ann. 1357, 14 South. 32, citing Bish. Cr. Jur. (3d Ed.) § 124.

There was no error in the ruling complained of.

[2-4] A bill was reserved to the ruling of the court, sustaining an objection to the question (propounded to the defendant, who had taken the stand):

"Were you on duty that night as policeman in the town of Elton, La.?"

The judge adds to the bill the following:

"The testimony objected to afterwards went to the jury without objection. Defendant, if the court erred in the ruling, therefore suffered no injury."

Counsel for defendant takes issue with the judge, thinks he is mistaken in saying that the testimony objected to went to the jury, and appeals to "the record as sent up." But the record contains nothing upon the point at issue, save the bill, drawn by the counsel, and the statement above quoted, written by the judge, which controls the situation.

Bill No. 5 shows that, the court having sustained the state's objection to the question (propounded to defendant by his counsel):

"Mr. Boudreaux, at the time you left your home that evening, in search of your family, say, about 7 o'clock, did you have any idea that you were going to kill Tom Boudreaux?"

Defendant's counsel requested permission to have his reasons for asking the question reduced to writing; whereupon the district attorney objected to the giving of any of the reasons in the presence of the jury.

"Counsel for defendant then and there stated that, if the district attorney objected for the jury to hear said reasons, that the court order the jury withdrawn; that he desired the record complete and full; that the Honorable Alfred M. Barbe, presiding, then proceeded to lecture counsel for defendant, by saying that counsel was not playing fair with the court; that the court had granted his request, but that, now, counsel had changed his reasons, all of which lecturing and chastising of counsel took place in the presence of the jury; that counsel for defendant thereupon excepted to said chastising and reserved a bill of exception," etc.

The statement per curiam is:

"Covered by bill 7. Any reprimand given Mr. Robira was justified by his conduct."

The "bill 7," referred to, was reserved to the ruling of the court sustaining the objection of the counsel for the state to the question propounded to defendant by his counsel, as above set forth; and the statement of the court, made part of that bill, is:

"The killing occurred several hours after Boudreaux left home."

Bill No. 5 relates exclusively to a matter of court discipline between the counsel and the judge, concerning which it is to be regretted that our brother of the district court has not made his statement more definite, as, upon the face of the papers, he seems to have gone rather far. We are unable to say that there was any error (counsel have pointed out none) to the prejudice of defendant in the ruling presented by bill No. 7. Intervening circumstances may have made it wholly immaterial whether the defendant had any idea, several hours before the event, that he was going to kill the deceased, and, in the absence of something to the contrary, we must assume that those circumstances were disclosed by the evidence.

[5] Bill No. 6 shows that, defendant being on the stand as a witness in his own behalf, his counsel asked him whether "the de-

ceased, Tom Boudreaux, had threatened his life, the day previous to, and on the day of, the homicide," to which the district attorney objected, on the ground that no hostile demonstration had been shown; whereupon the jury was withdrawn, and defendant was allowed to testify, in the presence of the judge, and his testimony, as taken down, is attached to the bill, and, in so far as it is material to the issue here presented, is to the following effect, to wit:

He was walking home, at night, accompanied by his wife and carrying upon his left arm his child, a girl between two and three years of age, when he saw the deceased, who was his wife's brother, coming towards him, from the direction of the light, which the witness was facing; it being otherwise rather dark. The deceased had something in his right hand, which witness thought was a "gun." He thought it was a gun because he did not think that deceased would have come at him that night without a gun, "as he had been threatening. * * *" When deceased reached witness, he pushed witness with his "left hand" (afterwards, "left arm"), turned him about three-quarters around; pushed violently. He then said, "What in the hell have you done to Cecile" (the wife and sister)? To which witness replied: "I accidentally hit her. Allow me to explain." Deceased then pushed him again and witness saw him bring his right hand around from behind, with the "object" in it. Whereupon witness fired twice. Witness heard some one say: "Go after him! I am with you." But "could not recognize from that distance," as he was directly against the light. He fired because he feared harm for himself and child; and he feared because deceased had threatened, on "Sunday evening," saying that he would resort to the gun. Mr. Horn had told him, also, that Tom (the deceased) wanted him (Horn) to go over and pack up witness' stuff, and wanted

him there as a witness. On cross-examination, he said: That deceased assaulted him, the first time, "very violently" (by pushing him with his "left arm"); did not knock witness down. Deceased had no pistol in his right hand. Witness drew his "gun" when deceased asked, "What have you done to Cecile?" It came to his mind that deceased had said that any time that he (witness) did anything to his (deceased's) family he would kill him. Had not worked with deceased on Sunday. The affair with his wife was accidental; heard her crying; did not hear her scream; did not see blood on her face, but heard her speak of it; did not shoot until deceased said:

" 'Everything will be settled right here.' Q. And you shot him? A. Yes. Q. You did not see him attempt to kill you, and you saw him plainly, that evening? A. It came to my mind that he had said that he would get me, and that everything would be settled right here. Q. And you knew that your wife, his sister, requested him to go after a lunch? A. (No answer.) Q. As you said, you used words, 'You are a son of a bitch'—did you not, at that time, say to Mrs. Boudreaux that you would get that son of a bitch before morning? A. I was not talking to her. Q. What did you tell her? A. I said 'You, no doubt, know that Tom said he would kill me.' "

In the case of State v. Ford, 37 La. Ann. 460, 461, the court, after laying down the premise that no one has the right to kill another simply because the latter is a bad man, or has uttered threats, proceeded to say that the main contention, in the case before it, was that a proper foundation had been laid for evidence as to the character of the deceased and threats made by him, by the testimony of a witness who had sworn that he had seen the deceased open the affray, which resulted in his death, by firing at one of the defendants, who had returned the fire only after he had been shot at twice. The judge a quo had found, in ruling upon the admissibility of the evidence offered, that numerous witnesses, called by the state, corroborated by all the witnesses for the defense, save

one, had testified that the deceased had not begun the conflict, and that he did not believe the witness who had sworn to the contrary.

The opinion of the court then proceeds as follows:

"The question for solution is therefore simple. It is this: Does the rule governing the admission of such testimony content itself with *testimony* of an overt act by the deceased, or does it require *proof* of such an act? There is a wide difference between *evidence* of an act and *proof* of the same. The theory of defendants' counsel seems to be that there is no difference between the two, and that under the rule any testimony in favor of the commission of an overt act on the part of the deceased person is a proper and sufficient foundation for the introduction of such testimony, and that the trial judge is thus stripped of all discretion and of all power to consider the veracity or credibility of the witness making the statement. Such an interpretation of the rule is flagrantly erroneous. 'They' (the prior threats of the deceased), says Wharton, 'are, however, inadmissible, unless proof be first given that there was an overt act of attack, and that the defendant, at the time of the collision, was in imminent danger.' Section 757. In passing on such a question, the trial judge must of necessity be clothed with the authority to decide whether a proper foundation has been laid for the proffered evidence, and that authority necessarily includes the discretion to ignore and not consider testimony which his reason refuses to believe. Without such authority, which is not arbitrary, but involves the exercise of sound legal discretion, the trial judge would be a mere automaton, or at most in the attitude of the presiding officer of a deliberative assembly with no greater powers than those of announcing the utterances or conclusions of others. We are therefore clear * * * that the trial judge * * * committed no error in excluding the testimony discussed in these two bills."

The doctrine thus enunciated has been affirmed by this court in a great many cases, and is firmly established in our jurisprudence. See State v. Golden, 113 La. 802, 37 South. 757, and the many authorities there cited, and State v. Craft, 118 La. 124, 42 South. 718; State v. Simmons, 121 La. 564, 46 South. 651. The jurisdiction of this court to review the ruling of the trial judge has been recognized; but, as has been said (State v. Golden, 118 La. 803, 37 South. 757), the difficulty attending its exercise is that the whole testimony upon which such ruling is predicated is not usually brought up, and this court cannot intelligently review the ruling with imperfect and inadequate information as to the foundation upon which it rests. And that is the situation here. It is not at all probable that defendant was the only witness who testified in this case, and it is quite evident that only a part even of his testimony has been attached to the bill. The statement of the trial judge is merely (in effect, as we take it, though it is badly transcribed) that, in his opinion, no such hostile demonstration had been shown as would authorize the introduction of defendant's testimony as to threats. It would be about as easy for this court to form an opinion of the size and appearance of a mosaic design, by an inspection of a bit of stone or glass taken therefrom, as for it to determine the value of, and the effect that should be given to, a mere fragment from the testimony of a defendant in a criminal prosecution, taken out of the whole mass of the testimony adduced in the trial. Merely by way of illustration: It appears from the excerpt from the testimony of the defendant herein (given as a witness in his own behalf when on trial for his life) that the deceased, his wife's brother, approached, as defendant was walking on the street with his wife and child, and that he was carrying an "object" of some kind in his right hand, which defendant says that he thought was a "gun" (otherwise, a "pistol"). On his cross-examination, defendant admits that it was not a gun, but the excerpt from his testimony does not show what it was. In the argument, counsel stated that it was a sandwich, and it is to be inferred that that fact was developed by other testimony than that which has been brought here.

The fragment from defendant's examination that is attached to the bill suggests the idea that defendant knew that the deceased

had gone after the sandwich, or "lunch," at the request of his sister. Thus, it reads:

"Q. You did not see him attempt to kill you, and you saw him plainly that evening? A. As I said before, it came to my mind that he had said that he would get me, and that everything would be settled right there. Q. And you knew that your wife, his sister, had requested him to go after a lunch? A. (The witness appears to have given no answer.) Q. As you said, you used the words, 'You are a son of a bitch'—did you not, at that time, say to Mrs. Boudreaux that you would get that son of a bitch before morning? A. I was not talking to her."

In State v. Ford, supra, this court (as we have already noted) makes the following statement as to the reasons assigned by the trial judge for his ruling upon the question that we are considering, to wit:

"In his reasons added to the bills the judge states in substance that, in his opinion, the foundation required by law for the introduction of the proffered evidence had not been laid, for the reason that numerous witnesses on behalf of the state, whose testimony had been corroborated by all the witnesses of the defense save one, had testified that the deceased had not begun the conflict, and that he did not believe the witness who was held (sic) as having seen the deceased open the fire."

[6] In the instant case, the trial judge states, in substance, that the foundation had not been laid, but gives no details. We infer that there was no other testimony tending in that direction than that of the defendant, which is attached to the bill; but we have no means of knowing what other testimony may have been given. It is therefore impossible for this court intelligently to review the ruling complained of, and we get back to the main question: Is the trial judge, in a murder case, bound to allow evidence of prior threats to go to the jury, together with any evidence, however flimsy and incredible, in his opinion, to the effect that, by reason of the action of the deceased, at the time of the killing, the defendant had reasonable cause to believe, and did believe, that he was in danger of suffering death or great bodily harm? As we have already shown, the established jurisprudence of this court answers that question in the negative, and we adhere to that jurisprudence. State v. Kellogg, 104 La. 580, 29 South. 285; State v. Golden, 113 La. 791, 37 South. 757; State v. Feazell, 116 La. 264, 40 South. 698; State v. Rambo, 117 La. 78, 41 South. 359; State v. Davis, 123 La. 133, 48 South. 771; State v. Miller, 125 La. 254, 51 South. 189; State v. Tomsa, 126 La. 688, 52 South. 988.

Bill No. 8 covers the same point as the bill thus considered. There are one or two other bills in the record, but they are not referred to by counsel, and we find nothing in them that requires consideration.

The conviction and sentence appealed from are, accordingly, affirmed.

O'NIELL, J., dissents, and hands down reasons. See 68 South. 425.

PROVOSTY, J., dissents for the reasons handed down by O'NIELL, J.