[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 676 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 677 
Defendant was indicted for the murder of one John Springer in the parish of Cameron on January 1, 1925. From a verdict of guilty, as charged and sentence to death, defendant prosecutes this appeal, and relies, for the reversal of the judgment against him, upon the following bills of exception, assignment of errors, and original and supplemental pleas to the unconstitutionality of the prosecution and sentence against him.
 Bill of Exceptions No. 1.
1. Defendant filed a motion to quash the indictment in this case on the ground that the grand jury that returned the indictment against him was not properly and legally instructed by the trial judge as to their duties.
The charge delivered by the trial judge to the grand jury at its impanelment on July 16, 1924, is as follows:
 "It is the grand jury's duty to examine into and to inquire into every violation, in Cameron parish, of the criminal laws of this state, about which any grand juror may hear or know of, or which may be presented to the grand jury by any person. It is the duty of each of you gentlemen to bring to the attention of the grand jury every violation of the law occurring since the last sitting of the grand jury, and which took place in Cameron parish, which you have personal knowledge of, or about which you have had any information. If you should violate this duty imposed upon you by the law, you become liable to fine, imprisonment in jail, or in the penitentiary. If any person wishes to inform you of the violation of a criminal law, it will be your duty to hear him, whether or not you have summoned him to appear before you.
 "You will hear and examine only the witnesses for the prosecution. You shall not examine witnesses for the defense, and you do not decide the guilt or innocence of an accused." *Page 679 
The charge delivered to the grand jury at its session on January 25, 1925, at which the indictment was returned in this case, is as follows:
 "Whenever you believe, from what you yourselves may know, or from evidence you may hear, or any other evidence, that it is probable an accused is guilty of some crime inquired into, and that there exists a prima facie case of guilt against him, and that probably he can be convicted, it will be your duty to find a true bill."
In State v. Lewis, 38 La. Ann. 680, 681, it was held by this court that —
 "The finding of the grand jury is not a verdict or judgment; it amounts, at most, to an accusation; and we know of no law which fixes the nature or quantum of the evidence on which the grand jury must rest their conclusions."
It is well settled that a defendant, or accused person, may not, as a matter of right, have his witnesses heard by the grand jury.
There is no law of this state giving to a defendant the right to summon his witnesses before a grand jury, or requiring a grand jury to examine witnesses for a defendant, in its investigation of crime.
Moreover, as said by this court in State v. White, 37 La. Ann. 172, 173:
 "We know of no authority recognizing errors in the general charge of the judge to the grand jury, as ground for quashing indictments found by them."
2. Defendant, in his original plea to the unconstitutionality of the prosecution and sentence against him, avers that in the prosecution against him herein he was denied due process of law and equal protection of the law, in violation of the inhibition contained in the Fourteenth Amendment to the Constitution of the United States, and in violation of article 1, sections 2, 6, and 9, and of article 7, section 42, of the Constitution of the state of Louisiana of 1921.
Defendant further avers that the record herein fails to show that defendant was indicted *Page 680 
by a grand jury, in accordance with the provisions of section 42 of article 7 of the Constitution of this state, which declares that a grand jury shall be composed of 12 persons, 9 of whom shall constitute a quorum and must concur to find an indictment.
Defendant further avers that the proceedings against him in the district court of Cameron parish were coram non judice, and in violation of article 1, section 9, of the Constitution of this state, which prohibits holding a person to answer for capital crime, unless on a presentment or indictment by a grand jury, and that the record herein does not show that defendant was indicted on a presentment made by a grand jury against defendant for murder.
Article 14 of the Amendments to the Constitution of the United States declares that —
 "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction equal protection of the laws."
The Fourteenth Amendment to the federal Constitution does not guarantee to citizens of the United States the privilege or immunity of being held to answer for a capital crime in a state court unless on a presentment or indictment of a grand jury.
Due process of law is process according to the law of the land. This process in the states is regulated by the law of the states. Hurtado v. People of the State of California, 110 U.S. 516, 4 S. Ct. 292, 28 L. Ed. 232.
It is true that the Fifth Amendment to the Constitution of the United States declares that —
 "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment by a grand jury," etc. *Page 681 
It is well settled, however, that the Fifth Amendment to the federal Constitution is a limitation upon the national government, and has no reference to state action. Fox v. Ohio, 5 How. 410, 12 L. Ed. 213; U.S. v. Cruikshank, 92 U.S. 542, 23 L. Ed. 588; Ohio v. Dollison, 194 U.S. 445, 24 S. Ct. 703, 48 L. Ed. 1062; Jack v. Kansas, 199 U.S. 372, 26 S. Ct. 73, 50 L. Ed. 234, 4 Ann. Cas. 689.
"Due process of law" in the state of Louisiana in all capital cases is by presentment or indictment by a grand jury. Article 1, § 9, Const. 1921.
That such process has been duly complied with in the present case is fully shown by the minute entry, page 1 of the transcript, reciting the impanelment of the grand jury in this case; the calling in open court of the venire of grand jurors; the appointment by the court of the foreman; the drawing from the envelope containing the names of the grand jurors; the administration of the oath to the foreman and to the other 11 grand jurors.
This minute entry is of date June 16, 1924, and shows that the 12 grand jurors were regularly selected, sworn, impaneled, and charged by the court. Act 135 of 1898, § 4, as amended by Act 58 of 1904; Act 135 of 1898, § 7, as amended by Act 155 of 1906; Act 135 of 1898, § 8.
Under section 42 of article 7 of the Constitution of 1921 it is provided that at least one grand jury of 12 shall be impaneled each year in the parish of Cameron, while the impanelment of a grand jury in each of the other parishes of the state is required under this section to be had twice in each year, to remain in office until a succeeding grand jury shall have been impaneled.
The minute entry found at page 2 of the transcript shows that the Fourteenth judicial district court for the parish of Cameron met pursuant to adjournment on January 14, 1925, Thos. F. Porter, Jr., judge presiding, *Page 682 
with the sheriff and the clerk in attendance, and recites that all of the grand jurors were present and answered to their names; that the court charged the grand jury; that the grand jury retired to the jury room for deliberation; and that the grand jury came into court and reported the following true bills, to wit: "State of Louisiana v. (No. 638) Ned Harvey, Charge, Murder." The minutes clearly show that the entire grand jury that had previously answered their names and had been charged reported on the same day and in open court, the true bill for murder against the defendant.
The indictment in this case is indorsed "A true bill," and is signed by Lloyd Vaughan, Foreman of the Grand Jury," and was filed by the clerk on January 14, 1925. On the same day defendant personally pleaded not guilty to the indictment.
In State v. Onnmacht, 10 La. Ann. 198, the entry on the minutes was, "The State of Louisiana v. K. Onnmacht, true bill and indictment, for lying in wait and shooting with intent to commit murder," and it did not affirmatively appear that the grand jury appeared in court and returned the indictment. The court said:
 "This renders it sufficiently certain, that the indictment to which the prisoner subsequently pleaded was presented by the grand jury in open court. The clerk enters on the minutes only what is done while the court is in session, and only such proceedings as ought to appear of record. No entry would be made on the minutes of what did not transpire in open court; and to presume it possible that the grand jury did not, as a body, return the indictment in this case, and in open court, would be reversing directly the maxim, `omnia rite acta.'"
The decision in the Onnmacht Case is expressly affirmed in State v. Mason, 32 La. Ann. 1018, the entry on the minutes in the latter case being as follows:
 "State v. Cosby Mason — indictment for petty larceny — indorsed, a true bill (signed): W.M. Abney, Foreman of the Grand Jury. Whereupon *Page 683 
his honor made the following order: Let the finding of this bill be recorded; let process issue thereon; let the bail bond of the defendant be fixed at," etc.
It was held in the Mason Case that, under the minute entry there made it would be presumed that the grand jury came into court in a body and presented the bill of indictment in open court.
The assignment of error that the record does not show that the grand jury was polled when the indictment was returned, that it does not show that even as many as nine members of the grand jury constituted the body when the indictment was found, or that nine concurred in the finding, or presented same in court, is a contention, in our opinion, without any foundation to support it.
That the record contains an indictment against the defendant for the crime of murder, signed as a true bill by the foreman of the grand jury, and filed in open court, to which indictment the defendant has pleaded not guilty, is beyond all question and cavil.
The defendant was tried by an impartial jury and convicted.
The only question therefore before this court is whether the minutes sufficiently show that this indictment was presented in open court by the grand jury as a body.
We are of the opinion that the actual entries in the minutes clearly show, under the decisions of this court, that the requirements of the law had been complied with.
3. In the supplemental plea to the unconstitutionality of the prosecution and sentence against him, defendant complains that he was denied due process of law and equal protection of the law, in violation of section 9, article 1, of the state Constitution, and in violation of the Fourteenth Amendment to the federal Constitution; that he was singled out and denied the right of establishing self-defense, or showing that he was not the aggressor in the combat charged against him; that he was denied the right to introduce *Page 684 
evidence before the jury to show that his life had been threatened by deceased; that the trial judge took the issue of self-defense away from the jury, and decided the issue adversely to defendant; and that the proof of the threats made against accused formed one of the essentials of self-defense, which should have been submitted to the jury.
Defendants contends, therefore, that he was denied trial by an impartial jury, as guaranteed to him by the state Constitution, and that his privileges and immunities as a citizen of the United States have been abridged by the action of the state court in his trial.
As shown by bill of exceptions No. 8, while the defendant was on the witness stand testifying in his own behalf, he was asked by his counsel the following question:
 "Well, had you received any intimation, or statement by any person, prior to that time, that Byrd said he was going to kill you?"
This question was objected to by the state's counsel, for the reason that no hostile demonstration, or overt act, on the part of the deceased had been shown at that time, as a foundation for the admission of the testimony. This objection was sustained by the court, for the reason that the testimony in the case convinced the trial judge that defendant was the aggressor, and that there was no overt act or hostile demonstration proven upon the part of either of the deceased, Byrd, or Springer, at the time of the homicide. It may be well to state in this connection that the testimony of the defendant himself shows that he killed both Byrd and Springer at night in a small shack with an automatic shotgun.
The indictment in this case charges the defendant with the murder of Springer only.
It is not pretended that there was any previous difficulty between defendant and Springer, or that Springer had made any threats before the killing against deceased.
Defendant, as shown by bill of exception *Page 685 
No. 8 was permitted to testify fully and freely as to all of the facts, from his viewpoint surrounding the killing of Springer, and no testimony of the defendant, as far as the charge of the murder of Springer is concerned, was excluded by the trial judge from the jury. We will pretermit, however, any decision as to the relevancy of this testimony on the trial of defendant for the murder of Springer.
In State v. Benoit, 144 La. 276, 80 So. 329, this court said:
 "The uniform jurisprudence in this state is to the effect that evidence of previous threats or of the dangerous character of the deceased, on the trial of a prosecution for murder, is not admissible until an overt act or a hostile demonstration has been proven to the satisfaction of the trial judge. See State v. Boudreaux, 137 La. 227, 68 So. 422, and authorities therein cited [also State v. Varnado, 131 La. 952, 60 So. 627]. But it is now also recognized that such conclusion of fact by the trial judge, when he decides that no overt act has been proven, is not final and is subject to review on appeal. See State v. Clark,142 La. 283, 76 So. 714."
In State v. Sandiford, 149 La. 933, 90 So. 267, it was said by this court:
 "Defendant has failed to lay the proper foundation for the admission of prior threats, by failing to show by a preponderance of evidence that the deceased made a hostile demonstration against him of such a nature as to justify him in believing that his life was in danger or that he was in danger of great bodily harm, and therefore proof of prior threats, for all purposes for which they are admissible, was properly rejected. State v. Williams, 111 La. 212, 35 So. 521; State v. Thomas,111 La. 806, 35 So. 914. Mere evidence of such threats [hostile demonstration], as distinguished from proof thereof, is insufficient. When the question arises as to whether a sufficient foundation has been laid for the admission of such evidence, the question is one for the court to determine. State v. Boudreaux,137 La. 227, 68 So. 422; State v. Golden, 113 La. 791, 37 So. 757; State v. Craft, 118 La. 113 [117], 42 So. 718; State v. Benoit, 144 La. 276, 80 So. 329."
The decisions above referred to have been cited and approved by this court in the recent *Page 686 
case of State v. Poole, 156 La. 437, 438, 100 So. 613.
The trial judge declares, in his per curiam to bill of exceptions No. 8, that he disbelieved defendant's testimony as to any overt act or hostile demonstration upon the part of either Springer or Byrd; that defendant's reason for killing Springer, and also for trying to kill Sykes, a witness attracted to the scene by the reports of the gun, was probably to get rid of the witnesses to his murder of Byrd; and that the only reason defendant had for killing Byrd was that he had discharged him.
The physical facts recited by the trial judge in this bill of exceptions clearly show that defendant was the aggressor; that he fired the first shot through the frame of the screen door, from the outside, while both of the deceased were eating supper at a table in the shack; and that this shot tore away the front part of Byrd's face, blinding him; and that scattering shots struck Springer's face and the west wall of the building.
Although defendant testified that he was attacked by Byrd with a pocket knife lying on the table, and that Springer reached to pick a pistol from the floor during the scuffle, when he was shot by defendant, no weapons were found, either on the table or on the floor, immediately after the killing.
The trial judge has recited numerous other facts and circumstances in the bill which convince us that his ruling was correct in holding that the facts showed that defendant was the aggressor, and that no overt or hostile demonstration was made by either of the deceased at the time of the killing. Under this state of facts, and under the settled jurisprudence of this state, the testimony as to threats was properly excluded by the judge a quo.
Article 6 of the amendments to the federal Constitution does not guarantee to citizens of the United States the right of trial *Page 687 
by jury in state courts; but applies only to criminal prosecutions in the courts of the United States. Thompson v. Utah, 170 U.S. 349, 18 S. Ct. 620, 42 L. Ed. 1061; In re Sawyer,124 U.S. 220, 8 S. Ct. 482, 31 L. Ed. 402; Brooks v. Missouri,124 U.S. 394, 8 S. Ct. 443, 31 L. Ed. 454; Callan v. Wilson,127 U.S. 549, 8 S. Ct. 1301, 32 L. Ed. 223.
Defendant has not been denied in any court of this state either the constitutional guaranty of due process of law, nor the equal protection of our laws.
 Bill of Exceptions No. 2.
A juror was challenged for cause by the state because of his attitude, as shown by his answers, as to conviction on circumstantial evidence.
It seems that the great part of the answers of the juror was not taken down. It appears however, from the per curiam of the trial judge, that the nature of circumstantial evidence was explained to the juror in detail by the court, and numerous examples of such evidence were given. After this explanation, however, the juror stated to the trial judge positively that he would not convict on circumstantial evidence.
As the case turned in a large measure upon circumstantial evidence, the challenge for cause is approved.
 Bill of Exceptions No. 3.
This bill also relates to the challenge for cause of a juror. The challenge was properly sustained, as the juror had answered falsely on his voir dire, and had declared that he would not find a verdict of guilty based upon circumstantial evidence. Moreover, the trial judge was convinced that this particular juror was trying to get on the jury.
 Bill of Exceptions No. 4.
On the trial of the case the prosecuting officer propounded the following question to a state witness: *Page 688 
 "I will ask you if you recognize that table there, right before you, as ever having seen it before, and where did you see it before."
Counsel for defendant objected to any evidence in relation to the table, or to anything else taken from the shack, for the reason that the articles were not in the same condition in which they were when seen by the witnesses. The table referred to is the one at which the deceased were seated at supper in the shack at the time of the killing.
In addition to this table, the state also offered during the trial the blood-covered bench, upon which Springer was found sitting, and leaning on the wall and just in front of the table; the wooden crate, also blood covered, upon which Byrd was sitting at the table; and the west wall of the shack, except several planks at the top, which was immediately behind the two men when killed, and against which Springer was sitting while at supper table.
The objection of counsel for defendant to the admissibility of this evidence is not well founded, as the trial judge states in his per curiam that there was absolutely no evidence suggesting that any of the articles had in any manner been changed in the slightest degree from the condition in which they existed at the time of the double killing.
 Bill of Exceptions No. 5.
This bill was taken to the overruling by the trial judge of the objection of counsel for defendant to the following question propounded by the district attorney to a state witness:
 "Could you judge, from the character of the hole in the wall, the range of the shot, what position the gun was held in, and what size shot made that hole?"
The objection was made by counsel for defendant that the witness had not qualified as an expert. The per curiam of the trial judge shows that the witness did not answer the question, but that the state asked, instead, *Page 689 
another question; the testimony admitted being as follows:
 "Q. I will now ask you if you were able to see how the shot went into the wall, in what range, or in what direction? A. The lower shot went into a sack of fur in the next room. Q. You did not get my point, Mr. Ebelding; I want to know where the shot went, upwards, downwards, or straight through. A. About straight through, I would judge; I never made any measurements, understand."
The prosecuting witness was not asked by the state's attorney for his opinion, but for a fact; namely, the direction the shot went through the wall. As this question was answered without objection, the bill is without merit.
 Bill of Exceptions No. 6.
On the trial of the case a state witness was asked by the prosecuting officer the following question:
 "If you were to see the wall yourself, would you recognize it? A. Yes, sir."
Counsel for defendant objected to the witness testifying to the shots in the boards offered in evidence, for the reason that they are not in the same condition in which they were at the time the shots were fired, and not in the same position that they were in, and that they are calculated, as they now are offered, to cause the jury to mistake the facts of the case.
The trial judge in his per curiam states that any number of witnesses testified affirmatively that there was no change in this wall, and that it was in the same condition that it was at the time of the shooting. The testimony was properly admitted.
 Bill of Exceptions No. 7.
The following question was propounded by the counsel for defendant to a defense witness: "Do you know whether or not your son went to the scene of the killing?" The witness answered, "Yes, sir."
Objection was made by the prosecuting officer to this answer as not being the personal *Page 690 
knowledge of the witness, but hearsay. The witness was then examined by the trial judge, and stated that he had sent word to his son to go there. There was no question raised by the state that the son of the witness did not go to the place of the homicide. In fact, the son was used as a witness by both sides. The bill is therefore frivolous.
 Bill of Exceptions No. 8.
This bill was reserved to the ruling of the trial judge in excluding testimony as to threats, and has been discussed in connection with bill of exceptions No. 1.
 Bill of Exceptions No. 9.
Defendant testified that, after the killing, he went to Orange, Tex., and gave himself up there, instead of surrendering to the sheriff or his deputy at Leesburg in Cameron parish, as he had some business he wanted to attend to in Orange before he went to jail. The killing occurred at Johnston's Bayou in Cameron parish, and the distance from Johnston's Bayou to Orange, Tex., is about the same as the distance from Johnston's Bayou to Leesburg in Cameron parish in this state. While it was a material question whether defendant had really fled from justice after the homicide, defendant had explained to the jury the reason why he went to Orange, Tex. The question propounded to him by his counsel, "How far is it, then, to Orange from Johnston's Bayou?" was therefore clearly irrelevant and immaterial, and the objection to the question by the state's attorney on that ground was properly sustained by the trial judge.
Jurors must be presumed to be acquainted with distances to nearby points. We see no prejudice resulting to the defendant from the ruling of the trial judge.
 Bill of Exceptions No. 10.
This bill is but a repetition of the same question to the defendant, "How far is it, *Page 691 
then, to Orange, from Johnston's Bayou?" The state made the same objection, and the trial judge the same ruling. We find no error in the exclusion of the testimony.
 Bill of Exceptions No. 11.
Defendant made a motion for a new trial on the ground that the verdict was contrary to the law and the evidence. This motion presents nothing for review by this court.
In a supplemental motion for a new trial it is urged, however, that the verdict returned by the jury in this case is a nullity, because one of the jurors was disqualified, as he could neither read nor write the English language.
In State v. Nash, 45 La. Ann. 1143, 13 So. 732, 734, the rule is laid down that, in order to entitle the defendant to a new trial on the ground of the disqualification of a juror, the defendant must allege and prove: (1) That the juror was legally incompetent; (2) that this fact was unknown to defendant and his counsel until after verdict; (3) that the juror was questioned on the point and answered that he was competent.
The supplemental application for new trial is fatally deficient, both as to allegation and proof as to the fact of the incompetency of the juror being unknown to defendant and his counsel until after verdict and as to the fact that the juror was questioned as to his competency on his voir dire and answered falsely. The trial judge, therefore, properly overruled the supplemental application for these reasons. State v. Foster,150 La. 971, 91 So. 411; State v. Holbrook, 153 La. 1025, 97 So. 27.
It is therefore ordered that the conviction and sentence appealed from be affirmed.
O'NIELL, C.J., concurs in the ruling on bills of exception No. 2 and No. 3, on the ground that a defendant in a criminal prosecution has no right to insist that any particular *Page 692 
individual shall serve on the jury, however qualified he may be. The Chief Justice hands down a dissenting opinion on bill No. 8; dissents also from the ruling on bills No. 9 and No. 10; and concurs in the ruling on bill No. 11, on the ground that the statute that fixes the qualifications of jurors (section 1 of Act 135 of 1898, p. 216) requires only that grand jurors, not petit jurors, "shall be able to read and write the English language."