JAMES A. KENNEDY *v.* RALPH H. WALKER,
WARDEN OF CONNECTICUT STATE PRISON

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued October 8—decided December 22, 1948

*Clayton L. Klein,* with whom was *Thomas J. Birmingham,* for the appellant (plaintiff).

*John P. Hodgson,* assistant state's attorney, with whom, on the brief, was *John S. Murtha,* assistant state's attorney, for the appellee (defendant).

MALTBIE, C. J. The petitioner, hereinafter called the plaintiff, was serving a sentence in the state prison for the crime of conspiracy and brought this habeas corpus action to secure his release on the ground that he was denied due process of law by the dismissal of an appeal to this court which he had filed and that he had been tried and convicted not upon an indictment by a grand jury but upon an information filed by a state's attorney. The trial court granted a motion to quash and dismiss the writ, and subsequently judgment was rendered for the defendant. From that judg-

ment the plaintiff has appealed. The question is: Was he, in the respects specified, deprived of rights guaranteed to him by the constitution of the United States?

The application for the writ merely alleged that the plaintiff was held in imprisonment at the state prison without law or right, and the writ directed the defendant warden of the prison to bring the body of the plaintiff before the court on a certain day with the cause of his imprisonment. The defendant filed a return in which he stated that he was producing the body of the plaintiff and which further alleged: The plaintiff was arrested upon a bench warrant issued by the Superior Court for Hartford County charging him with conspiracy to pervert and interfere with public justice and to violate certain statutes relating to gaming and liquor; he was tried upon an information for the crime of conspiracy filed by the state's attorney, was found guilty and was sentenced to the state prison for a period of not less than three nor more than six years; he filed an appeal to this court; thereafter the state filed a motion in this court to dismiss the appeal on the ground that it had not been taken in good faith and was not being prosecuted with due diligence; this court granted the motion; thereafter a mittimus was issued and the plaintiff was by virtue of it delivered to the defendant at the state prison where he has since been confined. To this return the plaintiff filed an answer. Aside from certain matters irrelevant or of no materiality to the vital issues before us, it did not controvert the essential facts stated in the return but alleged in substance that the dismissal of the plaintiff's appeal was a denial of due process of law under the constitution of the United States and that his conviction upon an information was in contravention of certain provisions of that constitution which he claimed require a grand jury indictment. Thereafter the de-

fendant filed a motion that the writ be quashed and dismissed upon three grounds, the only one of which material to the issues before us is that the provisions of the United States constitution upon which the plaintiff relied had no application to criminal procedure in a state court.

At the threshold of our consideration of this case we are met with a claim of the plaintiff that the motion to quash and dismiss was an improper method by which to raise the issue whether the facts stated in the return and the answer to it established legal justification for his conviction and imprisonment. The judges of the Superior Court have had for many years the power to make rules concerning procedure in habeas corpus; General Statutes § 5360; Sup. 1945, § 981h; but they have never done so. The statutes provide for a return by the defendant and an answer thereto but make no specific mention of any method by which the sufficiency of either as matter of law may be tested by an interlocutory pleading. General Statutes § 5896. We have, however, held that it is proper to demur to a return and that after a return has been filed the usual rules of pleading apply. *Scott* v. *Spiegel,* 67 Conn. 349, 358, 35 A. 262; and see *McDonald* v. *Hugo,* 93 Conn. 360, 361, 105 A. 709. A motion to quash is at common law a recognized pleading in habeas corpus; 29 C. J. 153; 39 C. J. S. 650, § 86; but properly used it is adapted only to raise issues as to the propriety of the issuance of the writ and is not a means by which to test the legal sufficiency of the facts alleged in a return or the answer to it. *McGlennan* v. *Margowski,* 90 Ind. 150, 153; *State ex rel. Hellige* v. *Milwaukee Liedertafel,* 166 Wis. 277, 279, 164 N. W. 1004. In view of the fact that under our procedure the usual rules of pleading apply

after a return has been filed, there is no reason to give a more extended scope to a motion to quash. The motion, however, was in effect one for judgment on the pleadings. Their allegations show no substantial dispute as to the facts, however it may be as to statements of legal conclusions contained in them, and we can conceive of no additional facts which would alter our decision upon the issues so presented. They have been fully argued before us. To remand the case on the ground that the motion to quash was an improper pleading to raise the vital issues in the case would be merely to delay its final disposition, with an ultimate determination not different from that we now reach. Under these circumstances we shall disregard any defect there may be in the procedure under which the issues were decided by the trial court and are now presented to us. *Campbell* v. *Rockefeller,* 134 Conn. 585, 589, 59 A. 2d 524; *Artman* v. *Artman,* 111 Conn. 124, 127, 149 A. 246.

We first consider the claim of the plaintiff that the dismissal of his appeal to this court constituted a denial to him of due process of law. The appeal was dismissed upon the ground that he had failed to prosecute it with reasonable diligence, and that conclusion was reached upon the basis of his failure reasonably to comply with the requirements of the procedure established for taking appeals to this court. *State* v. *Ward,* 134 Conn. 81, 54 A. 2d 507. The plaintiff does not contend that he was not given a fair and full trial in the Superior Court. He was fully heard upon the motion by the state for the dismissal of his appeal. An appeal in this state is a statutory privilege accorded only if the conditions fixed by the statutes and rules of court for taking and prosecuting it are complied with. *Bronson* v. *Mechanics' Bank,* 83 Conn. 128, 133, 75 A.

709; *Bennett* v. *United Lumber & Supply Co.,* 110 Conn. 536, 538, 148 A. 369. The determination of those conditions has been almost wholly vested in the judges of the Superior Court; General Statutes § 5700; and the judges of that court include the judges of the Supreme Court. General Statutes § 5373. One of the rules provides that if an appeal is not prosecuted with proper diligence it may on motion be dismissed. Practice Book § 412. The dismissal of the plaintiff's appeal was, in our judgment, justified under the rules of procedure in this state. Even if we were in error in our ruling, that would not constitute a denial of the due process of law required of the states by the fourteenth amendment to the United States constitution. *Howard* v. *Kentucky,* 200 U. S. 164, 172, 26 S. Ct. 189, 50 L. Ed. 421; *Thorington* v. *Montgomery,* 147 U. S. 490, 494, 13 S. Ct. 394, 37 L. Ed. 252. In fact, the plaintiff, having been tried and convicted in the Superior Court, could not have invoked that requirement had our statutes given him no right of appeal. *Ohio* v. *Akron Park District,* 281 U. S. 74, 80, 50 S. Ct. 228, 74 L. Ed. 710; *Reetz* v. *Michigan,* 188 U. S. 505, 508, 23 S. Ct. 390, 47 L. Ed. 563; *Kohl* v. *Lehlback,* 160 U. S. 293, 297, 16 S. Ct. 304, 40 L. Ed. 432.

Previous to 1784 there was no constitutional or statutory requirement in this state for an indictment by a grand jury as the basis for the trial of one accused of crime, whatever the nature of his offense. Neither the fundamental orders of 1638 nor the bill of rights embodied in the code of 1650 nor the royal charter of 1662, under which the government of this state continued to be conducted until the adoption of the constitution in 1818, contained any such provision. As early as 1643, a statute was enacted which provided that a grand jury of twelve men should be warned to appear before the "particular court," the court in

which criminal cases were ordinarily tried, in September, "or as many & oft as the Governor or Courte shall thinke meet, to make presentment of the breaches of any lawes or orders or any other misdemeanors they know of in the Jurisdiction"; 1 Col. Rec. 91; but this statute did not require indictment by a grand jury as the necessary basis of a prosecution. Later statutes authorized presentments by less than twelve; indeed, they might be made by a single grand juror; see General Laws, 1672, p. 27; Acts & Laws, 1702, p. 45; 5 Col. Rec. 324 (1712) ; and the learned annotator of the 1821 revision of the statutes states that as a result of these laws the practice of summoning a grand jury at a session of the court seems to have been discontinued. Statutes, Rev. 1821, p. 261. The Superior Court was established as a court of general jurisdiction in both civil and criminal matters in 1711; 5 Col. Rec. 238; and the same annotator goes on to say that it was the practice of that court to summon a grand jury in capital cases. Rev. 1821, p. 261.

In the revision of the statutes in 1784 it was enacted "That the Superior Court and County Courts in this State, shall have Power to order a Grand-jury of Eighteen of those chosen by the respective Towns in the County, or other sufficient Freeholders of the County where such Court is sitting, to be summoned, impannelled and sworn to enquire after and present such criminal Offences as shall be cognizable by said Courts respectively, where there shall be Occasion. And no Person shall be held to Trial, or put to plead to any Complaint, Indictment or Accusation for a Capital Offence punishable with Death, unless a Bill of Indictment be found against such Person for such Crime, by a Grand-jury legally impannelled and sworn; and that no Bill of Indictment shall be presented by any Grand-jury so impannelled, unless twelve at least of the Ju-

rors agree to it." Acts & Laws, 1784, p. 93. The part of this statute dealing with the requirement of a grand jury was incorporated in 1818 in the constitution in these words: "And no person shall be holden to answer for any crime, the punishment of which may be death or imprisonment for life, unless on a presentment or indictment of a grand jury; except in the land or naval forces, or in the militia when in actual service in time of war, or public danger." Const. Conn. Art. I § 9. The revision of 1821, page 260, contained these provisions: "The superior and county courts shall have power, when there shall be occasion, to order a grand-jury of eighteen sufficient freeholders of the county, where the court is sitting, to be summoned, impanneled and sworn, to enquire after all crimes and offences cognizable by said courts respectively; and no person shall be put to plead, or held to trial, for any offence punishable with death, or imprisonment for life, unless a bill of indictment be found, by a grand-jury, legally impanneled and sworn; and no bill of indictment shall be presented by any grand-jury so impanneled, unless twelve, at least, of the jurors agree to it. . . . For all other crimes presentment may be made by grand-jurors, appointed by towns, or information may be exhibited by the attorney for the state, in the county where committed." The law of 1784 remains unchanged in substance to this day. General Statutes §§ 6430, 6456. Indeed, for many years the only instances where a grand jury has been called upon to consider other offenses than those required by the constitution have been a few times when that body has been used to inquire into possible crimes of such a nature that ordinary investigatory processes would not serve; see *State* v. *Kemp,* 126 Conn. 60, 66, 9 A. 2d 63; *State* v. *Hayes,* 127 Conn. 543, 577, 18 A. 2d 895; and even where a grand jury has acted for such a pur-

pose we have held it proper for a state's attorney to prosecute the accused upon an information based on its finding, pointing out that the power of the state's attorney to prosecute an accused person upon an information, except in cases involving death or life imprisonment, has existed in this state for nearly two centuries. See *State* v. *Kenna*, 64 Conn. 212, 214, 29 A. 470.

The purpose of a requirement of an indictment by a grand jury is, no doubt, to prevent the harassment and suffering of an innocent person by compelling him to appear in court to respond to malicious or unfounded charges. *Ex parte Bain*, 121 U. S. 1, 12, 7 S. Ct. 781, 30 L. Ed. 849; *Beavers* v. *Henkel*, 194 U. S. 73, 84, 24 S. Ct. 605, 48 L. Ed. 882. While it has always been within the power of the General Assembly of this state to require indictments as a basis for prosecuting offenses other than those punishable by death or life imprisonment, it has never done so, but, on the contrary, has left unchanged the right of prosecution by information. The fact that throughout the more than three centuries this commonwealth has existed grand jury indictments have been required only for the most serious offenses is the strongest evidence that the people of this state do not believe that such indictments are necessary for their protection in other cases. This may be due in large part to the fact that the officers whose duty it is to prosecute serious offenses in this state, the state's attorneys, are appointed by the assembly of judges of the Superior Court and are responsible for the conduct of the office solely to them; and to the concomitants of that process, that the men so chosen have proven themselves lawyers not only of ability but of the highest integrity, men who have been imbued with the conviction that they hold their office as a public trust and who have lived up to the provi-

sion in the code of ethics of the bar of this state and of the American Bar Association: "The primary duty of a lawyer exercising the office of public prosecution is not to convict but to see that justice is done." We can find neither in the history of criminal procedure in this state nor in the attitude of the people towards it any basis for a conclusion that grand jury indictments ought to be a necessary foundation upon which all prosecutions for infamous crimes should rest.

While the cost to the state should be a very minor consideration in determining the requisites of a proper administration of criminal law, if we are right in the conclusion we have just stated it is proper to point out that to broaden the requirement of a grand jury indictment to include all infamous crimes would increase tremendously the expense to which the state would be put in the trial of those accused of crime. Nor can we shut our eyes to another practical consideration. There are in the state prison or at the prison farm more than 500 men who have been convicted of crimes other than those punishable by death or life imprisonment, many of them hardened or habitual criminals; there are numerous other men and women convicted of like crimes imprisoned at the state farm for women and the Connecticut reformatory; and should we sustain the plaintiff's claim these men and women might be at once loosed upon the community. With nothing to indicate any need for indictments for offenses other than those specified in the constitution, and with the practical results which would follow from requiring them, we would not be justified in holding them necessary unless we were compelled to do so.

The plaintiff claims that we are under such compulsion by virtue of certain provisions in the constitution of the United States. Article V of the bill of rights, adopted in amendment of it, provides: "No person

shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; . . ." The fourteenth amendment to the federal constitution provides, among other things: ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ." The plaintiff's contention is that it was within the intention of the latter provision to make binding upon the states as a part of due process the requirements of the bill of rights, including the one we have quoted. In *Hurtado* v. *California*, 110 U. S. 516, 534, 4 S. Ct. 111, 292, 28 L. Ed. 232, the Supreme Court of the United States specifically held that the provision we have quoted from the bill of rights in the federal constitution did not apply as regards procedure in the states and that an indictment was not required by the due process clause of the fourteenth amendment. The *Hurtado* case has been followed or accepted as authoritative in a long line of decisions of the United States Supreme Court.[1] In *Palko* v. *Connecti-*

[1] *Mackin* v. *United States*, 117 U. S. 348, 351, 6 S. Ct. 777, 29 L. Ed. 909; *Ex parte Bain*, 121 U. S. 1, 11, 7 S. Ct. 781, 30 L. Ed. 849; *Hallinger* v. *Davis*, 146 U. S. 314, 322, 13 S. Ct. 105, 36 L. Ed. 986; *McNulty* v. *California*, 149 U. S. 645, 648, 13 S. Ct. 959, 37 L. Ed. 882; *Montana Co.* v. *St. Louis Mining & Milling Co.*, 152 U. S. 160, 168, 14 S. Ct. 506, 38 L. Ed. 398; *Talton* v. *Mayes*, 163 U. S. 376, 384, 16 S. Ct. 986, 41 L. Ed. 196; *Hodgson* v. *Vermont*, 168 U. S. 262, 272, 18 S. Ct. 80, 42 L. Ed. 461; *Holden* v. *Hardy*, 169 U. S. 366, 384, 18 S. Ct. 383, 42 L. Ed. 780; *Bolln* v. *Nebraska*, 176 U. S. 83, 86, 20 S. Ct. 287, 44 L. Ed. 382; *Maxwell* v. *Dow*, 176 U. S. 581, 585, 20 S. Ct. 448, 494, 44 L. Ed. 597; *Beavers* v. *Henkel*, 194 U. S. 73, 84, 24 S. Ct. 605, 48 L. Ed. 882; *West* v. *Louisiana*, 194 U. S. 258, 264, 24 S. Ct. 650, 48 L. Ed. 965; *Dowdell* v. *United States*, 221 U. S. 325, 332, 31 S. Ct. 590, 55 L. Ed. 753; *Graham* v. *West Virginia*, 224 U. S. 616, 626, 32 S. Ct. 583, 56 L. Ed. 917; *Jordan* v. *Massachusetts*, 225 U. S. 167, 176, 32 S. Ct. 651, 56 L. Ed. 1038; *Lem Woon* v. *Oregon*, 229 U. S. 586, 589, 33 S. Ct. 783, 57 L. Ed. 1340; *Ocampo*

*cut,* 302 U. S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288, the court, by *Cardozo, J.,* said: "The right of trial by jury and the immunity from prosecution except as the result of an indictment may have value and importance. Even so, they are not of the very essence of a scheme of ordered liberty. To abolish them is not to violate a 'principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' "

The Supreme Court of the United States has held that, while the provisions of the bill of rights are not binding upon the states ex proprio vigore, certain guarantees contained in it are so fundamental to the protection of the rights and liberties of the people of this nation as to constitute a part of the due process of law required of the states by the fourteenth amendment; *Twining* v. *New Jersey,* 211 U. S. 78, 98, 29 S. Ct. 14, 53 L. Ed. 97; *Adamson* v. *California,* 332 U. S. 46, 51, 67 S. Ct. 1672, 91 L. Ed. 1903; *Bute* v. *Illinois,* 333 U. S. 640, 649, 68 S. Ct. 763, 92 L. Ed. 735; and see *Frankfurter, J.,* in *Malinski* v. *New York,* 324 U. S. 401, 414, 65 S. Ct. 781, 89 L. Ed. 1029; but it has declined to include among these provisions the requirement of an indictment in prosecutions for infamous crimes. *Powell* v. *Alabama,* 287 U. S. 45, 65, 53 S. Ct. 55, 77 L. Ed. 158; *Betts* v. *Brady,* 316 U. S. 455, 461, 62 S. Ct. 1252, 86 L. Ed. 1595. Of late a minority of the justices of the court have taken the view that it was the intention of the fourteenth amendment to embody all the provisions of the bill of rights in the concept of due

v. *United States,* 234 U. S. 91, 98, 34 S. Ct. 712, 58 L. Ed. 1231; *Gaines* v. *Washington,* 277 U. S. 81, 86, 48 S. Ct. 468, 72 L. Ed. 793; *Snyder* v. *Massachusetts,* 291 U. S. 97, 105, 54 S. Ct. 330, 78 L. Ed. 674; *Grosjean* v. *American Press Co.,* 297 U. S. 233, 243, 56 S. Ct. 444, 80 L. Ed. 660; *Brown* v. *Mississippi,* 297 U. S. 278, 285, 56 S. Ct. 461, 80 L. Ed. 682.

process of law; see dissenting opinions of *Black, J.,* in *Betts* v. *Brady,* supra, 474, and *Adamson* v. *California,* supra, 69, and concurring opinion of *Rutledge, J.,* in *In re Oliver,* 333 U. S. 257, 280, 68 S. Ct. 499, 92 L. Ed. 491; but this still does not represent the authoritative law as established by the decisions of the court. As it said in *Adamson* v. *California,* supra, 53, the contrary construction of the constitution "has become embedded in our federal system as a functioning element in preserving the balance between national and state power." That a minority of the justices of the United States Supreme Court now have expressed a view which would seem to be contrary to the decision in the *Hurtado* case is no foundation upon which we can reach a conclusion at variance with the numerous authoritative decisions of that court covering the entire period of sixty-five years since that case was decided, and with the decisions of all the state courts which we have found dealing with the specific issue before us; these courts have, upon the authority of the decisions of the United States Supreme Court which we have cited or which are of a like import, or upon the basis of their own reasoning, reached a conclusion that there is no constitutional requirement binding in their states that all prosecutions for infamous crimes must be by indictment.[1] We ourselves, in reliance upon the *Hurtado*

[1] *Kalloch* v. *Superior Court,* 56 Cal. 229, 239; *State* v. *Boswell,* 104 Ind. 541, 543, 4 N. E. 675; *Sawyer* v. *State,* 94 Fla. 60, 70, 113 So. 736; *State* v. *Manley,* 197 Iowa 46, 52, 196 N. W. 724; *State* v. *Barnet,* 3 Kan. 250, 253; *Lakes* v. *Goodloe,* 195 Ky. 240, 253, 242 S. W. 632; *State* v. *Harvey,* 159 La. 674, 680, 106 So. 28; *Ex parte McLaughlin,* 210 Mo. 657, 661, 109 S. W. 626; *Bolln* v. *State,* 51 Neb. 581, 585, 71 N. W. 444; *State* v. *Kavanaugh,* 32 N. M. 404, 406, 258 P. 209; *State* v. *Beam,* 184 N. C. 730, 739, 115 S. E. 176; *State* v. *Guglielmo,* 46 Ore. 250, 251, 79 P. 577, 80 P. 103; *State* v. *Shumpert,* 1 S. C. 85, 86; *State* v. *Keyes,* 8 Vt. 57, 63; *State* v. *Nordstrom,* 7 Wash. 506, 508, 35 P. 382; *Rowan* v. *State,* 30 Wis. 129, 149.

case and other decisions of the Supreme Court of the United States, reached a like conclusion in *State* v. *Palko,* 122 Conn. 529, 541, 191 A. 320, and *State* v. *Hayes,* 127 Conn. 543, 581, 18 A. 2d 895. As Justice Frankfurter points out in his concurring opinion in *Adamson* v. *California,* supra, 64, the ultimate test in determining whether the due process clause of the fourteenth amendment makes the bill of rights binding ex proprio vigore upon the states is not what the congress intended when it submitted the amendment to the states but what was the intent of the people of the various states as represented in their legislatures or conventions in ratifying it; and he adds: "Thus, at the time of the ratification of the Fourteenth Amendment the constitutions of nearly half of the ratifying States did not have the rigorous requirements of the Fifth Amendment for instituting criminal proceedings through a grand jury. It could hardly have occurred to these States that by ratifying the Amendment they uprooted their established methods for prosecuting crime and fastened upon themselves a new prosecutorial system."

Our conclusion is that the plaintiff was not deprived of any constitutional right either by the dismissal of his appeal or by the fact that he was convicted upon an information and not an indictment.

There is no error.

In this opinion the other judges concurred.