LECHE, J.
[1] The accused, Amel Benoit, appeals from a verdict of manslaughter which was rendered against him on an indictment reading, in part, as follows:
“That one Amel Benoit and one Stanley Benoit * * * with force and arms, on or aboht the 16th day of March in the year of our Lord, one thousand nine hundred and eighteen, one Arcade Patin, in the peace and dignity of the state then and there being unlawfully, willfully, maliciously, feloniously and of their malice aforethought did then and there kill and murder him.”
Several bills were reserved to this indictment on the ground that it “does not with certainty and precision charge defendant with the killing of Arcade Patin.” Defendant in his brief says: “It seems to us that this language is so faulty as to he meaningless.”
While it is true that the indictment fails to follow the simple and clear language authorized by section 1048 of the Revised Statutes and is inartistically drawn, yet it is not, in our opinion, so faulty as to sustain the objection leveled at it, nor is it meaningless. To hold the recital in the indictment as meaning that Patin was unlawfully in the peace of the state would be a strained construction, and that would be meaningless. Nor can it be said that the qualifying words “willfully, maliciously, feloniously and of their malice aforethought” apply to the status of Patin, for the plural pronoun “their” indicates that these words qualify the actions of the defendants and not those of Patin. “Him,” the last word in the quoted passage of the indictment, is undoubtedly meaningless; but it may be treated as redundant, and, when so treated, leaves the other recitals subject to the sole construction that was done, “unlawfully, willfully, maliciously, *279 feloniously and of their malice aforethought” was the killing and murdering of Patin by the defendants. We therefore hold that bills Nos. 1, 2, and 14 are not well taken.
[2] The serious question in the case is brought up by bill No. 9. All other bills were taken to the admissibility of evidence in regard to the conduct and actions of Patin, the deceased, just previous to the homicide, and to his dangerous character, and depend upon the disposition to be made of bill No. 9. The accused, Amel Benoit, being upon the stand as a witness, testified: That shortly before the homicide the deceased had trampled on his (the accused) toes, using violent and threatening language. That, to avoid any difficulty, the witness and his brother Stanley' Benoit left the poolroom where the occurrence took place, and that thereafter they met the deceased with Anthony Robert, and that the deceased told witness that he must cut out whistling. The witness at the time made no reply to the insulting- remarks of the deceased. Some one then asked the deceased to leave, but the deceased refused, saying that he was going to stop witness from whistling. Thereupon deceased put both his hands in his hip pockets under his coat and advanced towards witness in a threatening manner. That, when Patin reached witness, Patin struck him a violent blow on his chest and almost knocked the witness down. That, while witness was in a stooping position as a result of the blow, witness took his closed knife from his hip pocket, opened it, and cut Patin with it, because he believed by the action of the deceased that the deceased was about to kill him, and witness used his knife in self-defense. Whereupon counsel for defendants propounded to the witness Amel Benoit, the accused, the following question:
“Bid you know at the time what the reputation was in the community of Arcade Patin, as a violent and dangerous man?”
To which question the district attorney objected on the ground that the proper foundation had not been laid to' permit the introduction of this character of evidence, and that no overt act on the part of the deceased had as yet- been proven.
The trial judge then makes the following ruling and statement:
“The accused is the first and only witness so far placed on the stand by the defendant. The overt act required by law, to admit of such proof at this time has not been satisfactorily established or proven, and for that reason the objection is maintained.”
[3, 4] The uniform jurisprudence in this state is to the effect that evidence of previous threats or of the dangerous character of the deceased, on the trial of a prosecution for murder, is not admissible until an overt act or a hostile demonstration has been proven to the satisfaction of the trial judge. See State v. Boudreaux, 137 La. 227, 68 South. 422, and authorities therein cited. But it is now also recognized that such conclusion of fact by the trial judge, when he decides that no overt act has been proven, is not final and is subject to review on appeal. See State v. Clark, 142 La. 283, 76 South. 714. In the present case, the trial judge simply says that—
“The overt act required by law, to admit of such proof at this time, has not been satisfactorily established or proven.”
If the undenied testimony of the accused is worthy of belief, the overt act was certainly proven, unless other equally credible witnesses testified to the contrary. The trial judge announces his conclusion of fact upon that question without giving any reason therefor. He does not say that the accused has shown himself to be unworthy of belief, nor does he say that the accused is contradicted by other witnesses. From all that, appears in his statement and reasons, the testimony of the accused upon this question, *281 though uncontradicted, is arbitrarily discounted and ignored by him.
[5] The accused, under the statute adopted in his state (Act 29, p. 39, of 1886), is a competent witness, and his testimony must be weighed by the same rules that apply to the testimony of other witnesses, and it should not, without reason and especially where it is uncontradicted, be arbitrarily ignored. Defendant’s bill of exception sets out that testimony in detail, and it was incumbent upon the state, if that testimony was unworthy of belief, to have set forth the facts justifying the conclusion that it was unworthy of belief. .
In the case of State v. Ford, 37 La. Ann. 460, the leading authority upon this question, the trial judge stated that numerous witnesses on behalf of the state, whose testimony had been corroborated by all the witnesses for the defense save one, had testified that the deceased had not begun the conflict, and that he did not believe the witness who testified that the deceased had opened the fire. From this statement of facts by the judge in his per curiam, which the court is bound to accept in preference to the unsupported statements of counsel, the ruling of the trial judge was affirmed. But in the case at bar it is not denied that the accused testified that he was unjustifiably assaulted by the deceased, no facts are stated to assail the truth of that statement, it is not stated that this testimony was contradicted by other witnesses, nor that the credibility of the accused as a witness was impaired or destroyed by his own testimony or that of other witnesses, and we are therefore bound to accept as true the facts as testified to by the witness.
[6,7] “Recitals * * * in a bill of exceptions will be accepted as * * * true * * * where they are not corrected or contradicted by the trial judge.” State v. Bellard, 132 La. 491, 61 South. 537.
The judge, in explaining a bill of exceptions, must state facts, not conclusions, and let the court on appeal judge of their importance. The rule is that recitals of a bill of exceptions as drafted by counsel must be accepted as correct, unless contradicted by the judge. See State v. Wright, 48 La. Ann. 1525, 21 South. 160; State v. Riggio, 124 La. 614, 50 South. 600; State v. Robinson, 52 La. Ann. 616, 27 South. 124.
Believing then that the ruling of the trial judge brought up by bill of exceptions No. 9 was erroneous, the verdict in this case should be set aside, and the case remanded for a new trial, and
It is so ordered.
O’NIELL, J., concurs in the decree, but is of the opinion that it was the province of the jury, not the judge, to decide whether the deceased committed an overt act or made a hostile demonstration in the fatal difficulty, and that the evidénce of the dangerous character of the deceased was admissible, when the question as to who was the aggressor was put at issue by the introduction of some evidence on the question.