(104 So. 627)

No. 27142.

STATE v. BOURGEOIS.

(April 27, 1925.     Rehearing Denied May 25, 1925.)

*(Syllabus by Editorial Staff.)*

1. Criminal law ⬩⬩599 — Court held not to have abused its discretion in denying continuance because district attorney abandoned more serious charge in indictment and stated intention to prosecute on lesser one.

Where district attorney, on day called for trial, abandoned charge of cutting with dangerous weapon with intent to murder, and stated he would prosecute on lesser crime of cutting with intent to kill, *held*, that court did not abuse its discretion in denying defendant's motion for continuance on ground of surprise, where there was no suggestion of any injury to defendant by having charge reduced, no additional witnesses were asked for by defendant, and change in charge did not necessitate any alteration in nature of defense which defendant was prepared to offer.

2. Criminal law ⬩⬩261(2)—Separate arraignment under charge of cutting with intent to kill unnecessary after abandonment of charge of cutting with dangerous weapon with intent to murder, to which defendant had pleaded not guilty.

A charge of cutting with a dangerous weapon with intent to murder included a charge of cutting with intent to kill, and arraignment on graver charge necessarily carried with it arraignment of lesser charge, and hence, after defendant pleaded not guilty to graver charge, after which it was abandoned, it was not necessary that defendant be arraigned under charge of cutting with intent to kill.

3. Criminal law ⬩⬩1111(5)—Conflict between statement of defendant's counsel and trial judge as to whether sufficient foundation established for admission of threats, resolved in favor of trial judge, in absence of proof that he was in error.

In prosecution for cutting with intent to kill, where there was a conflict between statement of defendant's counsel and that of trial judge as to whether sufficient foundation had been established for admission of previous threats made by victim of assault, *held*, that trial judge's statement of facts will be accepted, in absence of proof that he was in error.

4. Criminal law ⬩⬩1158(4)—Trial judge's conclusion as to whether sufficient foundation laid for admission of threats not disturbed, unless manifestly erroneous.

Question whether sufficient foundation has been laid for admission of evidence of threats is peculiarly within province of trial judge, and his ruling will not be disturbed on appeal, unless all facts bearing on particular issue are properly brought up, and judge's conclusion is found to be manifestly erroneous.

5. Criminal law ⬩⬩1028—Defendant failing to request that clerk be directed to take down evidence cannot complain that judge did not fulfill alleged promise that he himself would do so.

In prosecution for cutting with intent to kill, since under Act No. 113 of 1896 counsel could have required judge to direct clerk to take down evidence relating to question as to whether there was any overt act on part of victim, as predicate for proving threats, *held* that, where no such request was made, defendant cannot complain that judge did not take down all evidence relating thereto, as it is alleged he stated he would, especially where judge stated that evidence was not sufficient to justify proof of threats.

6. Witnesses ⬩⬩405(1)—Testimony held properly excluded as being attempt to impeach witness on irrelevant and collateral matter.

In prosecution for cutting with intent to kill, in which prosecuting witness testified that he had gone to place of difficulty to meet his wife, testimony that he had promised to meet his wife at place other than scene of difficulty, offered to impeach him, *held* properly excluded, since it was irrelevant and inadmissible either as primary evidence or for purpose of impeachment.

7. Criminal law ⬩⬩1170(1) — Exclusion of statement of state's witness on direct examination held not prejudicial to defendant.

In prosecution for cutting with intent to kill, exclusion of testimony of state's witness

on direct examination as to argument between defendant and his father-in-law, prior to cutting, was not prejudicial to defendant, where judge stated that witness had gone over such testimony, and that it was not part of res gestæ and was wholly irrelevant and immaterial, pertinence of such testimony was not made apparent by bill and argument of counsel, and defendant did not avail himself of privilege of bringing out such omitted facts on cross-examination.

**8. Judges ☞49(2)—Trial judge not disqualified from deciding motion for new trial because of statement in per curiam that he thought defendant guilty.**

Mere fact that trial judge, in some of per curiams to bills of exception reserved during trial, stated that in his opinion guilt of accused had been established did not render him incompetent, nor disqualify him, from passing on motion for new trial.

**9. Criminal law ☞1111(5) — Bill of exceptions, relating to refusal to have clerk take down testimony, held without merit.**

Bill of exceptions, alleging that court denied defendant's request to have clerk of court take down evidence relating to bills of exceptions, held without merit, where it appears that in fact it was defendant's counsel who objected to clerk taking down statements, and judge in his per curiam stated that he would have ordered clerk to take down statements, if so requested.

**10. Criminal law ☞939(1) — New trial for newly discovered evidence consisting of testimony, of defendant's wife, alleged to have been prevented from testifying, held properly denied.**

In prosecution for cutting with intent to kill, defendant's wife having been present and observed the difficulty but not testifying at trial, held, that defendant's motion for new trial for newly discovered evidence, consisting of that of his wife, and alleging that defendant was prevented by his father-in-law from interviewing his wife, and that she was not permitted to appear as a witness in his behalf, was properly denied, since defendant could have obtained wife's attendance in court by use of compelling process of court.

**11. Criminal law ☞881(2)—Verdict held legally responsive to indictment.**

Where under indictment charging cutting with dangerous weapon with intent to kill and murder, prosecution abandoned graver charge and defendant was tried for cutting with intent

to kill, held, that verbal announcement of district attorney that he would try accused on charge of cutting with intent to kill did not constitute a charge against defendant, and a verdict of "guilty of cutting with intent to kill as charged," and without mentioning dangerous weapon, was legally responsive to indictment.

O'Niell, C. J., dissenting in part.

Appeal from Fourteenth Judicial District Court, Parish of Jefferson Davis; Thos. F. Porter, Jr., Judge.

Adolph Bourgeois was convicted of cutting with intent to kill, and appeals. Affirmed.

John B. Fournet, of Jennings, and Griffin T. Hawkins, of Lake Charles, for appellant.

Percy Saint, Atty. Gen., John J. Robira, Dist. Atty., S. H. Jones, Asst. Dist. Atty., both of Lake Charles, Percy T. Ogden, Asst. Atty. Gen. (J. Bernard Cocke, of New Orleans, and M. D. Miller, of Jennings, of counsel), for the State.

THOMPSON, J. The defendant was indicted for cutting with a dangerous weapon with intent to murder one Lewis Newman. He was duly arraigned on this charge and the case fixed for trial. When called for trial on the day fixed, counsel for defendant objected to going to trial, for the reason that a copy of the indictment and a list of the jurors by whom defendant was to be tried had not been served. The district attorney, recognizing that the objection was well taken, announced to the court that he would prosecute for the crime of cutting with intent to kill, under which charge no service of indictment and jury list was required.

The counsel for defendant then asked for time to make an affidavit for a continuance, which was denied by the court. The case was tried and the jury rendered the following verdict: "We, the jury, find the accused guilty of cutting with intent to kill as charged."

From a maximum sentence of three years in the penitentiary this appeal is prosecuted.

The errors which the defendant asserts are grievous and prejudicial are embodied in eight bills of exception identified respectively by the first eight letters of the alphabet. We shall dispose of them in the order of their lettering and as they appear in the record.

[1] Bill A. The first complaint under the bill is that, when the district attorney abandoned the more serious charge and stated that he would prosecute on the lesser one, the defendant's counsel asked for time to file a motion for a continuance which the court denied.

The only ground suggested for a continuance was that counsel was taken by surprise at the action of the district attorney. There is no intimation or suggestion of any injury which defendant could possibly suffer by having the charge reduced from one the maximum punishment of which is twenty-one years in the penitentiary to one in which the extreme penalty does not exceed three years at hard labor. No additional witnesses were asked for by defendant, and the change in the charge did not necessitate any alteration in the nature of the defense which defendant was prepared to offer against the graver charge.

We find in the ruling of the court no abuse of the discretion vested in the trial judge in matters of postponement or continuance.

[2] The second complaint under this bill is that the defendant was not arraigned under the charge of cutting with intent to kill. The natural and obvious answer is that the crime for which defendant was tried is included in the one with which he was charged, and the arraignment on the graver charge necessarily carried with it an arraignment on the lesser charge.

And a general plea of not guilty to the charge of cutting with intent to murder involved a plea of not guilty to that of cutting with intent to kill.

It would introduce into our jurisprudence a novel, unusual, and unheard of doctrine to require that a defendant, after having been arraigned and having entered a plea of not guilty to an indictment charging a specific offense, should be separately arraigned and required to plead to each and every lesser offense which is included in the one charged.

If the contention were recognized, then in every charge of murder the accused would have to be separately arraigned for manslaughter before he could be legally convicted of that crime. The mere statement of the proposition shows its complete want of merit and serious consideration.

Bill B. The defendant as a witness in his own behalf was asked if any threats had been previously made against him by Newman, the man whom he was charged with cutting. The evidence was objected to by the state for the reason that a proper foundation had not been made by proof of an overt act or hostile demonstration. The objection was sustained and the testimony excluded. · The judge in his per curiam states that there was no evidence introduced to show that Newman was the aggressor, but, on the contrary, that the evidence showed that the defendant walked up to Newman, spit in his face, and cursed him. That Newman shoved the defendant aside, whereupon the defendant, who already had his knife out and hidden, cut Newman seriously in both sides and on the hands. That after Newman had been cut once, he struck the defendant with his fist, when the defendant again cut Newman. The judge states that these facts were abundantly established by any number of witnesses and were not contradicted by anybody, except in some particulars by the defendant himself.

It is claimed in the unsigned bill of exception prepared by counsel for defendant that the defendant testified that he was talking to his wife when David East called for a Mr. Le Doux, a member of the church,

but, before Le Doux could get to where defendant was talking to his wife, Newman rushed up and said, "I do not need Le Doux to get rid of this 'rooster'"; at the same time he struck defendant and knocked him up against the church and then knocked him down, and while down defendant was kicked twice by some one in the large crowd which was around him; and while getting up defendant drew his knife and cut Newman, who was right in front of him, with his fist doubled up, crouched up and getting ready to hit him again. It is further stated in the bill that Philip Sansack, who had been with Newman all the evening, had testified to the above facts.

The judge, however, in his per curiam states that counsel is in error as to the testimony of Philip Sansack, and further that the defendant's own testimony showed that he was guilty and that there was absolutely no necessity for the cutting of the unarmed man.

[3] The rule is that, where there is a conflict between the statement of defendant's counsel and that of the trial judge, the latter's statement of facts will be accepted in the absence of proof that the judge was in error. State v. Hopper, 114 La. 557, 38 So. 452; State v. Sandiford, 149 La. 946, 90 So. 261.

Accepting the statement of the judge, it is evident that a legal and sufficient foundation had not been established by a preponderance of the evidence for the admission of previous threats made by the victim of the assault.

[4] The question of whether a sufficient foundation has been laid for the admission of evidence of threats is peculiarly within the province of the trial judge to determine, and his ruling in the matter will not be disturbed on appeal, unless all the facts bearing upon the particular issue are properly brought up and the judge's conclusion, after a review, is found to be manifestly erroneous. This rule is no longer an open question in the jurisprudence of this state. State v. Boudreaux, 137 La. 227, 68 So. 422; State v. Golden, 113 La. 791, 37 So. 757; State v. Craft, 118 La. 117, 42 So. 718; State v. Benoit, 144 La. 276, 80 So. 329; State v. Sandiford on rehearing, 149 La. 951, 90 So. 261.

[5] It is stated in the bill that the judge did not give all the facts on the question as to who was the aggressor, and in this connection counsel complain that the judge announced in the beginning of the trial that he would take down all the evidence relating to any objections or bills of exception, thereby inducing counsel to believe that the judge was taking down the evidence. But here again we find counsel and the judge in conflict as to what really happened.

The judge says in his per curiam that he did not state that he would take down all the evidence relating to objections or bills of exception. That no request was made to take any evidence on this bill, and that no request was made to take the testimony of Sansack, the defendant, or anybody else on this bill.

Under Act 113 of 1896 the counsel for the defendant could have required the judge to direct the clerk to take down the evidence relating to the question as to whether there was any overt act or hostile demonstration on the part of the victim of the affray as a predicate for proving threats, but as no request to that effect was made by counsel for defendant, and as the judge st. es that the evidence was not sufficient to justify proof of threats, we are powerless to grant defendant any relief.

[6] Bill C. The prosecuting witness Newman had testified that he had gone to the church (the difficulty occurred at the church) for the purpose of meeting his wife. The defendant offered to prove by several wit-

nesses that Newman had promised his wife to meet her at his (Newman's) sister's house, and not at the church; it being the theory of the defense and its contention that Newman went to the churchhouse for a difficulty with the defendant, and the evidence being offered to impeach the testimony of Newman. Objection was made by the state and sustained by the court.

We find no error in the exclusion of the testimony. It was irrelevant and inadmissible, either as primary evidence or for purposes of impeachment. A witness may not be impeached on an irrelevant and entirely collateral matter.

[7] Bill D. The main complaint presented by this bill is that a state witness, Solan East, was not permitted to state in his own way and all that he heard and saw during the difficulty at the church. The witness was asked to state to the jury just exactly how the trouble took place, and he started off by saying that the defendant was in argument with his father-in-law. The state objected to the witness' reiterating what had already been testified to and asked the witness to state what took place after Bourgeois walked up to Newman, the prosecuting witness. Counsel for defendant objected to the state stopping the witness from testifying in his own way, and insisted that, if the witness were permitted to go on and testify as to what took place that night, the testimony would be relevant and material, and would corroborate the testimony of the defense to be later offered, showing who was the aggressor in the fight, and further:

"That, if this witness is allowed to state what he knows, counsel believes that he will bring out facts that will show the main prosecuting witness was the aggressor in this fight."

The judge states that the witness East had already told two or three times something about an argument that the defendant was having with his father-in-law, and that it was this testimony that was ruled out by the court, first, because it had already been gone over, and second, because it was not a part of the res gestæ and was wholly irrelevant and immaterial.

The judge could find no connection between the argument that the accused had with his father-in-law and the difficulty between the defendant and Newman. The cutting took place after the argument in question, and there appears to have been no relation or connection between the argument of defendant and his father-in-law and the difficulty between defendant and Newman. The pertinence of the testimony is not made apparent by the bill and argument of counsel.

Besides, the witness was a state witness and on direct examination by the state. The defendant at that stage of the examination had no control over the witness nor of the manner and order in which the witness related the facts as he viewed them. If the witness omitted facts which were a part of the res gestæ and material to the defense, or if such facts were kept from the jury by reason of the ruling of the court, the defendant had the privilege of bringing out such facts on cross-examination. It does not appear that defendant exercised that right and privilege. We find no error in the ruling of the court.

[8] Bill E. This bill from its recital seems to indicate an objection to the trial judge's passing on the motion for a new trial because the said judge had formed and expressed the opinion of the guilt of the accused. The bill states that the defendant gave notice to the court that he would file a motion for a new trial; that the court fixed a date for hearing the motion; that before the expiration of said time the judge drafted, wrote, and signed his statements and per curiams to certain bills of exception which were reserved during the trial; that the court set out in its reasons for overruling the exceptions its statement of what facts were established and what facts were not es-

tablished during the trial, from which it appears that the court's mind was already made up as to whether defendant was entitled to a new trial or not.

We can discover nothing in the bill which requires any extended comment. It was necessary for the judge to prepare per curiams giving the reasons for his various rulings during the progress of the trial and to state his recollection of the testimony. The mere fact that in some of the per curiams the judge stated that in his opinion the guilt of the accused had been established did not render him incompetent nor disqualify him from passing upon the motion for a new trial. If for the reason stated the judge should be held disqualified in this case, then it follows that in every case where the verdict of the jury was in accord with the judge's appreciation of the evidence, and he happened so to express his opinion in signing the bills of exception, he would be subject to be recused. If the judge who heard all the evidence could not sit in judgment on the motion for a new trial, to whom could the case be assigned? Certainly not to a judge who knew nothing about the case. Such an impossible situation must not be created.

[9] Bill F. The defendant complains in this bill that he requested the court to permit him to have the clerk of court take down the evidence relating to the various bills of exception which were reserved throughout the trial, but that the court refused to allow the clerk to take down the evidence, saying, "Never mind, I will take this down myself" (speaking to the clerk); that the judge, not being a stenographer and not being able to write shorthand, was unable to get all the facts and evidence testified to by the various witnesses, and that consequently some testimony does not appear in the record.

This bill was disapproved and disallowed by the court. The judge states in his per curiam that no such bill was asked or reserved. The court further stated that, when counsel reserved bill B, he requested a stenographer. The court stenographer was not in Jennings, nor was there any other one available. The counsel was so informed and was told by the judge that the clerk would take the testimony or whatever else was desired. That counsel objected to this, saying that he wanted a stenographer. That the court explained to counsel that the law provided that the clerk take down the facts when bills were to be reserved. The clerk is not a stenographer, and started to take the matter in longhand, whereupon the judge remarked that he would take the matter down on bill B, and there was no objection made by counsel. It was the counsel who objected to the clerk taking down the statements, and no bill was reserved or asked in this connection at any time during the trial. The judge states that, had he been requested to have the clerk take down the facts, or had any objection been made to his taking them down, he would have ordered the clerk to do so in compliance with the terms of the statute. The bill is altogether without merit.

[10] Bill G. This bill was reserved to the overruling of a motion for a new trial. The motion is merely a reiteration of the matters contained in the several bills of exception and an elaboration of the facts on which said exceptions are founded. These we have already discussed.

In a supplemental motion, however, it is urged that a new trial should be granted in order that defendant might be afforded the opportunity of having his wife testify in his favor; it being alleged that his wife was present and witnessed the difficulty. The facts to which it is alleged the wife will testify are set forth at length and in detail in the motion, and are supported by the affidavit of defendant and his wife.

The reason urged in the motion for not having the testimony of the wife at the trial

of the case is that the defendant and his attorney were both informed before the trial that, due to the great enmity existing between defendant and his wife's family, he was not permitted to go to his father-in-law's house, where his wife had been taken by her father, and find out the facts which she knew about the case. It is alleged that the defendant tried in every reasonable way through others to procure his said wife's testimony, but that, through the threats made against her by her father, she was not permitted to appear as a witness in his behalf; the reason for her nonappearance having just been found out from the wife herself.

The reason for refusing the new trial on the grounds asked in the supplemental motion is thus stated by the judge:

"The supplemental motion is fatally defective, in that it fails to state that the facts sought to be proven by defendant's wife were not testified to by other witnesses, and could not have been testified to by others. State v. Torris, 138 La. 460-462, 70 So. 475."

"It is also fatally defective for the reason that due diligence in the efforts to obtain the testimony of the defendant's wife is not shown. Defendant knew his wife was present at the difficulty and yet failed to summon her."

The judge further states that he was convinced that the verdict of the jury was correct, and that the testimony of defendant's wife, even if as shown in the motion, would not change the verdict.

The facts as set out in the motion can hardly be termed "newly discovered evidence" in the legal acceptation of that term, nor can defendant's wife be said to be a newly discovered witness. The defendant knew that his wife was present at the difficulty, and he knew that she was in a position to see and to hear everything that took place. If his version of the difficulty were true, he was bound to know that his wife would give a like account of it if she spoke truthfully. She was within easy reach of the process of the court, and the defendant, had he seen fit to do so, could have had her attendance at court and the opportunity to ascertain if she were willing to testify in his behalf. There seems to have been an estrangement between the defendant and his wife's family, and it was only after the defendant's conviction that he learned that his wife is willing to testify in his favor. But the fact that defendant was not at liberty to visit his father-in-law and the fact that defendant's wife was distrained by her father, if it were a fact, furnish no legal excuse for failing to make use of the compelling process of the court to obtain the attendance of the wife at court. The defendant took the chances of an acquittal without availing himself of a legal right, and he must suffer the consequences of his own neglect.

[11] Bill H. The motion in arrest of judgment which forms the subject of this bill is leveled at the failure of the verdict to state that the cutting with intent to kill was done with a dangerous weapon.

As we have already stated, the indictment charged the cutting to have been done with a dangerous weapon, to wit, a knife, with intent to kill and murder. The prosecution abandoned the graver charge, and the defendant was tried for cutting with intent to kill, and was found guilty as charged. The verdict was legally responsive to the indictment and carried with it every element charged in the indictment and necessary to complete the crime of cutting with a dangerous weapon with intent to kill.

Counsel for defendant concede that, where the indictment charges that the cutting was with the use of a dangerous weapon, a verdict of guilty as charged would be legally sufficient. But the argument that the verdict as rendered in this case is defective is founded on the erroneous assumption that the defendant was tried on the verbal announcement of the district attorney that he would try the accused for "cutting with intent to kill," and which omitted the mention of a dangerous weapon. The announcement of the prosecutor did not constitute the

charge against defendant, nor was the accused tried on such statement. The trial was had on the indictment as returned, modified, or qualified, as it was by the elimination of the greater crime on motion of the district attorney. This is the usual and customary procedure. In cases where an accused is tried for murder and convicted of manslaughter and a new trial is granted, the second trial can only be for manslaughter, but is had on the original indictment and upon the mere announcement of the prosecuting attorney. It has never been deemed necessary to have a new indictment returned for the lesser crime. Nor has it ever been considered that the verbal announcement of the district attorney that he would try the accused on the lesser crime constituted within and of itself the foundation for the prosecution.

The matters contained in the several assignments of errors filed in this court are covered by the rulings on the bills of exception. For the reasons assigned, the conviction and sentence of the accused are affirmed.

O'NIELL, C. J., dissents from the ruling on bills B and C, and from that part of the ruling on bill G which affirms State v. Torris, 138 La. 460, 70 So. 475.