190 So. 332

**STATE v. GENDUSA.**
No. 35270.

May 29, 1939.

Rehearing Denied June 26, 1939.

Chandler C. Luzenberg, Sr., and David A. Neuhauser, both of New Orleans, for appellant.

David W. Ellison, Atty. Gen., James O'Connor, 1st Asst. Atty. Gen., and Chas. A. Byrne, Dist. Atty., and Conrad Meyer, Jr., and George J. Gulotta, Asst. Dist. Attys., all of New Orleans, for the State.

LAND, Justice.

Section 850 of the Revised Statutes of Louisiana was amended and re-enacted by Act No. 21 of 1926 so as to read as follows:

"Section 850. Whoever, with intent to kill, rob, steal, commit rape, or any other crime, shall, in the night time, break and enter, or having with such intent, entered in the night time, break a dwelling house, dwelling tent, or any other place used as a dwelling, any person being lawfully therein, and such offender being, at the time of such breaking or entering, armed with a dangerous weapon, or arming himself in such house or tent, or other place used as a dwelling, with a dangerous weapon, or committing actual assault upon any person lawfully being in such house or tent or other place used as a dwelling, any person present, aiding, assisting or consenting in such burglary, or accessory thereto before the fact, by counseling, hiring or procuring such burglary to be committed, on conviction, shall suffer * * death."

On September 6, 1938, the Grand Jury returned in the Criminal District Court for the Parish of Orleans an indictment against the defendant, Peter Gendusa, charging him with the violation, in that Parish, on the 17th day of July 1937, of Section 850 of the Revised Statutes of Louisiana, as amended by Act No. 21 of 1926, a capital offense.

The defendant had been previously indicted, convicted and sentenced to death under an indictment drawn under Section 850, as amended, but had succeeded, in an

appeal to this court, in having the verdict of the jury set aside, the sentence annulled, and the case remanded to the Criminal District Court for the Parish of Orleans "for further proceedings consistent with the views herein expressed." State v. Gendusa, 190 La. 422, 182 So. 559, 561.

(1) On the second trial of the case, defendant filed a motion to quash, based on the ground that the offense charged in the new indictment is prescribed. The trial judge overruled defendant's plea of prescription, and defendant reserved to this ruling Bill of Exception No. 1.

The new indictment in this case contains two counts. In the first count it is charged:

"That one Peter Gendusa and one John Beecham, each, late of the Parish of Orleans, on the seventeenth day of July, in the year of our Lord, one thousand nine hundred thirty seven with force and arms in the Parish of Orleans aforesaid, and within the jurisdiction of the Criminal District Court for the Parish of Orleans did each feloniously, wilfully and unlawfully, in the night time, break and enter number eleven hundred thirty five (1135) Marais Street, in the Parish of Orleans, State of Louisiana, the dwelling house of Thomas Dupont and Miss Jennie Dupont, with intent to rob, steal and murder, armed with dangerous weapons, and did each commit actual assault upon Thomas Dupont and Miss Jennie Dupont, two persons lawfully being in the said dwelling house, contrary to the form of the Statute of the State of Louisiana in such cases made and provided and against the peace and dignity of the same."

The second count of the indictment negatives prescription in the following language:

"And your Grand Jurors of the State of Louisiana duly empaneled and sworn in and for the body of the Parish of Orleans, in the name and by the authority of the said State, upon their oath do further present that although more than one year has elapsed since the commission of the aforesaid offense, in manner and form aforesaid, yet, heretofore, to wit: On the Fourth day of August, 1937, a bill of indictment was returned by the Grand Jury of the Parish of Orleans, State of Louisiana, the said indictment then returned being predicated on the same facts which form the basis of the present indictment, which said bill of indictment was annulled and set aside by judgment of the Supreme Court of the State of Louisiana on the thirtieth day of May, 1938, and more than one year has not elapsed since the entry of the said judgment, contrary to the form of the Statute of the State of Louisiana in such cases made and provided and against the peace and dignity of the same."

The endorsements on the reverse side of the bill of indictment are as follows:

"No. 93,482            Section C
"State of Louisiana     (No Bail)
      v.        C. C. Luzenberg, Esq.
  Peter Gendusa    D. A. Neuhauser, Esq.
  and John Beecham         Attys.

"Indictment for Violating R. S. 850 as amended by Act 21 of 1926.

"A True Bill

"Signed: Abe Horowitz, Foreman of Grand Jury

"New Orleans, Sept. 6, 1938."

In other words, the judgment reversing the conviction and sentence of defendant, Peter Gendusa, was rendered May 30, 1938, and the present or new indictment against defendant was returned in open court by the Grand Jury for the Parish of Orleans on September 6, 1938, or within less than four months after the indictment in Gendusa case had been declared invalid by this court and the case remanded for a new trial.

The indictment first returned against defendant charged that the offense was committed by him on the 17th day of July, 1937. It is not contended, and could not be contended, by the defense in this case that the offense had been prescribed before the filing of the first indictment, which was on the 4th day of August 1937, but defendant's contention is that more than one year has elapsed since the commission of the crime on the 17th day of July 1937.

As shown by the per curiam to Bill of Exceptions No. 1, the reasons of the trial judge for overruling the plea of prescription are predicated on Article 8 of the Code of Criminal Procedure, as amended by Act No. 21 of 1935, 2d Ex.Sess., which reads as follows: " * * * Provided, that in all criminal prosecutions an indictment or presentment found or exhibited, or an information filed, or an affidavit filed where prosecution may be by affidavit, before the above prescription has accrued, shall have the effect of interrupt-

ing such prescription; and if any such indictment, presentment, information or affidavit be quashed, annulled or set aside, or a nolle prosequi be entered, prescription of one year and six months, respectively as above provided, shall begin to run against another indictment, information or affidavit based on the same facts, only from the time said original indictment, presentment, information or affidavit was quashed, set aside, annulled or nolle prosequied."

█ The offense is charged in the original indictment to have been committed by defendant on July 17, 1937. The return of that indictment on August 4, 1937, interrupted prescription, under Article 8 of the Code of Criminal Procedure.

The original indictment was declared to be invalid by this court in the Gendusa case on May 30, 1938, and the present, or new indictment was returned on September 6, 1938. As the prescription began to run against the present or new indictment only from the time the original indictment was declared invalid by this court in the Gendusa case, May 30, 1938, and the new indictment was returned September 6, 1938, it is clear that the plea of prescription tendered by defendant is without merit and was properly overruled by the trial judge, under the provisions of Article 8 of the Code of Criminal Procedure.

(2) The defendant, Peter Gendusa, objected to the indictment, being read to the jury and to the opening statement of the prosecuting officer being made, and to any

witness testifying in the case, on the ground that the indictment shows by the allegations set forth in the first and second count, and by the date of the endorsement and the return, that the offense charged in the first count is prescribed.

The objections were overruled and Bill of Exceptions No. 3 was reserved by defendant. Bills of Exceptions Nos. 1 and 3 both relate to the same subject matter of prescription, but bill No. 3 presents some issues that are not involved in Bill of Exceptions No. 1.

Defendant had the right to submit his special plea of prescription to the trial judge, in limine, for decision, instead of referring the plea to the jury. Defendant submitted his special plea to the trial judge, who held that, under the evidence adduced by the State, the offense charged against defendant was not prescribed, as an interruption of prescription, under Article 8 of the Code of Criminal Procedure, had been shown by the prosecution. The special plea of prescription, for this reason, was overruled by the trial judge, in limine, before trial by the jury.

In State v. Brown, 185 La. 1023, at page 1030 et seq. 171 So. 433, 435, it is said in the opinion: "When a defendant files a plea of prescription before going to trial, the judge must hear testimony in support of the plea if the defendant insists upon it, and must dispose of the plea. State v. Hayes, 162 La. 917, 111 So. 327. The reason is that article 8 of the Code of Criminal Procedure provides that no person shall be prosecuted, tried, or punished for an offense unless the indictment or information is presented within the time therein prescribed. If the crime is prescribed the defendant cannot be tried, and it is therefore necessary for the judge to pass upon the plea of prescription before trial, when filed in time. The failure of a defendant who wishes to avail himself of the plea of prescription to file the same before trial and to insist upon a ruling thereon is equivalent to a waiver of the right accorded him. Where he files the plea after the trial has begun he has no right to have the case withdrawn from the jury and the plea of prescription referred to the judge. State v. Posey, 157 La. 55, 101 So. 869."

In other words, the defendant in this case had the right to select the tribunal before which he desired to have the plea of prescription tried and disposed of, i. e., either before the judge in limine, or before the jury, had he filed the plea after the trial has begun.

As the defendant filed the plea of prescription before going to trial, it was the duty of the judge to hear the testimony in support of the plea, and any argument that counsel for defendant desired to make on the plea of prescription, and to dispose of the plea.

The complaint, therefore, of defendant in Bill of Exception No. 3, that the judge ruled, after he had heard and disposed of the plea of prescription in limine, that defendant could not make his defense of prescription before the jury is without merit.

Although the question presented by a plea of prescription in a criminal

case is a question of fact, it is not a question of fact relating to the guilt or innocence of the party accused, and, in order to avail the defendant of the protection which the statute in terms affords, the plea must be decided in limine if the defendant demands it.

The statutory protection to a defendant extends not merely against punishment for an offense, but also against prosecution and trial for an offense. Art. 8, Statutes of Limitations, Code of Criminal Procedure.

█ The decision of the trial judge as to whether the offense charged is prescribed is not a final decision, but is subject to review by this court, upon the same facts upon which his decision is based.

The situation in this case is not different from a prosecution for murder, in which the trial judge has the right to pass upon the question whether an overt act or hostile demonstration was made by deceased at the time of the killing, and to exclude from the jury all testimony as to previous threats, unless such overt act or hostile demonstration is proved to the satisfaction of the trial judge, whose ruling is not final, but is subject to review in this court on appeal.

As stated by this court in State v. Brown, 172 La. 121, 133 So. 383, 385:

"(4) Article 482 of the Code of Criminal Procedure reads as follows:

"'In the absence of proof of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.'

"The settled jurisprudence of this state is that, in a prosecution for murder, evidence of the dangerous character of the deceased and of prior threats by him against the accused is inadmissible until and unless an overt act or hostile demonstration by him toward accused has been proved to the satisfaction of the trial judge. State v. Dreher, 166 La. 924, 118 So. 85; State v. Harvey, 159 La. 674, 106 So. 28; State v. Poole, 156 La. 434, 100 So. 613; State v. Benoit, 144 La. 276, 80 So. 329; State v. Boudreaux, 137 La. 227, 68 So. 422; State v. Varnado, 131 La. 952, 60 So. 627.

"(5) And while this is true, it is also well settled that, if a trial judge, after hearing the testimony offered in support of the accused's contention that deceased was guilty of hostile demonstrations or an overt act, decides that no overt act was committed, his ruling on that question is subject to review by this court on appeal. State v. Dreher; State v. Harvey; State v. Poole; State v. Benoit, supra, and State v. Clark, 142 La. 282, 76 So. 714."

If the decision of the trial judge were final, either as to the question of prescription, or as to the question of an overt act or hostile demonstration upon the part of the deceased, a different and graver issue would have been presented for decision by this court.

█ (3) It was incumbent on the part of the State to prove beyond a reasonable doubt that the crime charged in the indict-

ment was not prescribed, and for this purpose the State offered and filed in evidence a certified copy of the original indictment, No. 89,489, showing the date on which the crime was committed and the date on which the indictment was returned by the grand jury, also a certified copy of the decree of the Supreme Court of May 30, 1938, and a certified copy of the refusal of the application for rehearing of date July 1, 1938, to which offer no objection was made by counsel for defendant and appellant, and no bill of exceptions was reserved.

We find no error in the overruling by the trial judge of defendant's plea of prescription.

(4) Bill of Exceptions No. 2 was reserved to the overruling by the trial judge of the plea of jeopardy tendered by defendant.

In State v. Gendusa, 190 La. 422, 182 So. 559, defendant filed a motion to quash and a motion in arrest of judgment, containing substantially the same allegations. Both of these motions were overruled in the Criminal District Court for the Parish of Orleans. On appeal to this court by defendant, it is said in the Gendusa case: "In both motions the invalidity of the indictment is alleged, on the grounds, first, that it is insufficient in law; second, that it fails to state or set out any offense known to the law; and, third, that it fails to state or set out any offense against section 850 of the Revised Statutes * * and fails to state or set out any averment which would bring the case under said section of the Revised Statutes." State v.

Gendusa, 190 La. page 427, 182 So. page 560.

In other words, defendant, in the motions to quash and in arrest of judgment, urged strenuously, that the indictment, which was drawn under Section 850 of the Revised Statutes, as amended, was invalid in all particulars, and did not state or set out·"any offense known to the law," under Section 850 of the Revised Statutes, as amended, or under any other statute of the State.

The court sustained the contention of the defendant that the indictment did not set forth a capital offense under Section 850 of the Revised Statutes because it failed to allege a breaking either before entry or after entry.

And because the indictment was invalid, the court held that the verdict was invalid, and that the sentence was invalid, and closed its opinion in the Gendusa case in the following language:

"Our conclusion is that the motion in arrest of judgment is well founded and that it should have been sustained.

"The object and effect of a motion in arrest of judgment, when well founded, is to strike down all proceedings previously had in the case. State v. McDonald, 178 La. 612, 152 So. 308.

"For the reasons assigned, the verdict of the jury is set aside, the sentence of the court is annulled and this case is remanded to the district court for further proceedings consistent with the views herein expressed."

Most assuredly, this court did not remand the case for a second prosecution on the invalid indictment, which able counsel for defendant contends escaped the general cataclysm of all prior proceedings, resulting from the object and effect of sustaining the motion in arrest.

Defendant did not contend in the Gendusa case that the indictment was valid for any lesser offense; but, on the contrary, defendant most positively asserted, in both the motion to quash and in the motion in arrest of judgment, "that it [the indictment] fails to state or set out any offense known to the law."

So, there were no further proceedings to be taken as to the invalid indictment in the Gendusa case, under which defendant was acquitted in this court, when the case was remanded to the lower court.

Section 9 of Article 1, Bill of Rights, of the State Constitution of 1921 declares: "nor shall any person be twice put in jeopardy of life or liberty for the same offense, except on his own application for a new trial, or where there is a mistrial, or a motion in arrest of judgment is sustained."

The same provision is contained in Article 274 of the Code of Criminal Procedure of this State. It is also provided in Article 279 of the Code of Criminal Procedure that: "To constitute former jeopardy it is necessary, that the court in which the former trial took place had jurisdiction, and was legally constituted; that the former acquittal or conviction was rendered on a sufficient indictment;

that the proceedings ending in the former acquittal or conviction were valid; that the former verdict rendered was responsive to some charge contained in the indictment and was of such form as to be the basis of a valid judgment; and that the offense formerly charged and that presently charged are either identical, or different grades of the same offense, or that the one is necessarily included in the other."

A violation of Section 850 of the Revised Statutes, as amended, is a capital offense. In State v. Gendusa, 190 La. at page 429, 182 So. at page 561 this court said: "Under the indictment in this case, the defendant is charged with entering, but not with breaking after entering. The offense charged is not a capital offense. The verdict of the jury, necessarily carrying with it the penalty of death, is not responsive to the indictment, and is therefore of no effect. Code Criminal Procedure art. 405. The verdict being invalid, the sentence imposed thereunder is also invalid. Code Crim. Proc. art. 522."

The former acquittal of defendant in this court being on an invalid indictment, and the former verdict rendered not being responsive to the indictment, defendant's plea of former jeopardy is necessarily without merit and was properly overruled.

"When the indictment is in form so defective, that defendant, if found guilty, will be entitled to have any judgment entered therein against him reversed for error, he is not in jeopardy; and should he be acquitted, he will be liable to be tried on a new and valid indictment." 1 Bish Cr.Law, Section 1021.

77 78

(5) Bill of Exception No. 4. This bill of exceptions was reserved to the refusal of the trial judge to grant defendant a new trial. All of the testimony taken on the trial of the case is annexed to and made a part of this bill. Section 10 of Article VII of the Constitution of 1921 defines the appellate jurisdiction of the Supreme Court of the State, and in the last paragraph of this section, it is provided that: "The appellate jurisdiction of the Supreme Court shall also extend to criminal cases on questions of law alone, whenever the penalty of death, or imprisonment at hard labor may be imposed; or where a fine exceeding three hundred dollars or imprisonment exceeding six months has been actually imposed."

The settled jurisprudence of the State is, that the overruling of a motion for new trial on the ground that the verdict is contrary to the evidence in the case, although taken down and annexed to a bill of exceptions, does not present a question of law for review by this court, as this court will not review the sufficiency of the evidence to determine the guilt or innocence of the accused.

However, in State v. Wells, 147 La. 822, 86 So. 268, 269, the court, in affirming the conviction and sentence of the accused, said: "(2, 3) No doubt, if from the record an accused appears to have been convicted without any evidence at all having been produced against him—literally none at all—a question purely of law is presented. But in this case there was evidence produced, and the question which defendant seeks to have this court review is

that of the sufficiency of that evidence; in other words, pass on the question of guilt or innocence." See also State v. Reuter, 148 La. 245, 86 So. 782.

Bill of Exceptions No. 4 is based on the contention, as stated in defendant's brief, page 28: "That the accused was convicted without any evidence at all having been produced against him. Literally no evidence at all to sustain the material allegation in the Indictment that he did Break and Enter the dwelling house as charged in the Indictment."

It is very evident that a technical breaking in law is a sufficient breaking, where there has been an entry into a dwelling house.

As shown at page 24 of the Transcript, the State produced the following testimony before the jury:

"Q. You said he was in the 'drop shed' while you were mopping? A. He was at the door.

"Q. What kind of door? A. Screen door.

"Q. How (does) that screen door work? A. It opens on the inside.

"Q. If you push it open does it stay open? A. No, sir; it don't stay open.

"Q. What happens to it? A. It shuts back.

"Q. Why? A. Its got a spring on it.

"Q. Did he come through that screen door then? A. Yes, sir.

"Q. Did he have to push that door open? A. Yes, sir."

On page 36 of his brief, defendant contends that the opening of a screen door does not in law constitute a breaking, since the purpose of a screen door is "to keep insects out and not human intruders."

This contention is fully answered in the following cases:

In case of State of Iowa v. Conners, 95 Iowa, 485, 64 N.W. 295, it was held:

"It is contended in defendant's behalf that the opening of the screen door was not a breaking, within the meaning of the statute. The thought of counsel appears to be that, as the screen door was a temporary protection against flies, and not a permanent door, the opening of it was not a breaking.

"It has long been held that the raising of a latch and opening a door, or raising an unfastened window, to gain access to a building, is a breaking."

The Iowa case is similar to the case at bar. The permanent door at the rear of the room was open, but there was a screen door which was closed. This screen door was not fastened with a latch, but was hung on spring hinges which served to keep it closed. The defendant opened this screen door, and went into the building. It was held that this, in law, constituted a breaking.

In the case of State v. Henderson, 212 Mo. 208, 110 S.W. 1078, 1079, 17 L.R.A., N.S., 1100, 15 Ann.Cas. 930, the Court instructed the jury as follows: "The court instructs the jury that, if they find from the evidence that the screen door mentioned in the evidence was kept closed by means of hinges and springs attached to same in such manner that some force was necessary to open said door and that the defendants opened said door, by using such force, then the jury can find that there was a breaking of the dwelling house mentioned in the evidence."

Defendant's counsel excepted to these instructions. On appeal, the Supreme Court of Missouri held that the instructions were good and affirmed the judgment.

In Wharton's Criminal Law, Vol. 2, 11th Ed., Section 971, page 1192, it is said: "Opening a latch is a breaking; and if a door be closed, it is not necessary, to constitute burglary, that the door should be latched."

In a foot note on page 1193 of Wharton's Criminal Law, Vol. 2, is the following citation: " 'Breaking' does not necessarily mean breaking of lock or of a fastening, simply pushing open the door meets all the requirements. State v. Davenport, [2 Boyce 12, 25 Del. 12], 77 A. 967, 1909; Jones v. State, 60 Tex.Cr.R. 426, 132 S.W. 476, 1910."

In State v. Plumlee, 177 La. 687, at page 698, 149 So. 425, at page 428, this court held that: "Breaking as an element of burglary may consist of merely opening a door, though unlocked, or the removal or displacement of any structure which obstructs free passage."

There was not only evidence of breaking, in the sense of the law, but of entry also, introduced before the jury. The contention of defendant that he was con-

victed without any evidence at all having been produced against him, is without merit.

■ (6) A reading of the record shows that defendant and one John Beecham, previous to the commission of the offense charged, conspired to burglarize the Dupont dwelling and to rob its inmates of their savings in a cedar chest in the room of Thomas Dupont.

It is intimated by defendant, at page 36 of his brief, that appellant's co-conspirator, Beecham, because he was employed by the Duponts as a servant, may have had a lawful right to enter the Dupont dwelling. This contention however, is without foundation. In Wharton's Criminal Law, 11th Ed., page 1197, Section 978, it is stated: "If a servant conspire with a robber, and let him into the house by night, this is burglary in both; for the servant is doing an unlawful act, and the opportunity afforded him of doing it with greater ease rather aggravates than extenuates the guilt."

■ (7) In defendant's brief at page 37, he complains that "The indictment does not charge a breaking after the house was entered."

The theory upon which defendant's second capital conviction is sought to be set aside is that before breaking and entering the Dupont dwelling, the defendant entered a "drop shed." The record, however, shows that this "drop shed" forms no part of the Dupont dwelling house. It is a mere enclosure with no floor, has two doors, both of which are always open, one opening into the rear of the yard, and the other opening into the alley on the outside.

After getting into the "drop shed," in order to get into the dwelling house, it is necessary to ascend three steps, and to open either the permanent door or the screen door, or both, which lead into the kitchen and it was the screen door, which was closed, and which defendant pushed open in order to enter the Dupont dwelling house.

In this case the State has charged and proved a breaking and entering, under Section 850 of the Revised Statutes, as amended, of the Dupont dwelling house in the night time, under the aggravated circumstances set out in the statute and in the indictment.

The motion for new trial was properly overruled by the trial judge.

■ (8) Motion in Arrest of Judgment. Section 850 of the Revised Statutes, as amended, is produced on the first page of the opinion in this case, and a comparison of the allegations of the indictment with the language of the statute clearly shows that the offense has been charged in the terms of the statute, and in compliance with the requisites for a valid indictment as set out in the opinion of this court in State v. Gendusa, 190 La. 422, 182 So. 559.

"A motion in arrest of judgment lies only for a substantial defect, patent upon the face of the record." Code of Criminal Procedure, Art. 517.

"No defect that is merely formal, or cured by verdict, or that cannot be ascertained without an examination of the evidence, is good ground for arresting judgment." Code of Criminal Procedure, Art. 518.

"It is well settled that a motion in arrest of judgment cannot be based upon absence of evidence from the record or upon lack of proof, as in criminal cases the evidence forms no part of the record, and such motion must be founded upon defects patent upon the face of the record." State v. McKinney, 164 La. 102, 113 So. 781, 782, citing numerous authorities.

We have found no substantial defects patent upon the face of the indictment in this case, or upon any other part of the record.

Motion in arrest of judgment was properly overruled by trial judge.

(9) Assignment of Errors. Defendant filed in this court on March 22, 1939, the following assignment of errors:

"1. That the trial court erred in not sustaining the motion and plea of the defendant and appellant that the indictment was prescribed, and that this is apparent on the face of the record, and constitutes a substantial violation of a statutory and constitutional right."

"2. That the trial court erred in not sustaining the plea of former jeopardy filed by the defendant and appellant and that this constitutes a substantial violation of a statutory and constitutional right.

Wherefore the said Peter Gendusa appellant herein prays that the judgment of the trial court be set aside and that he be discharged."

If the new indictment returned in this case September 6, 1938, as shown by the endorsement on its back, had not negatived prescription in the second count, it would have been prescribed upon its face, as it is alleged that the offense was committed on July 17, 1937, or more than one year prior to the filing of the indictment.

An indictment not negativing prescription is fatally defective. State v. West, 105 La. 639, 30 So. 119; State v. Foley, 113 La. 206, 36 So. 940; State v. Hoffman, 120 La. 949, 45 So. 951; State v. McNeal, 159 La. 386, 105 So. 381.

This court has already shown in this opinion that although more than a year has elapsed since the commission of the offense, July 17, 1937, the return of the first indictment against defendant on August 4, 1937, interrupted prescription under Article 8 of the Code of Criminal Procedure; that prescription did not begin to run against the new indictment, except from the date the first indictment was annulled in this court on May 30, 1938, and that the new indictment was not prescribed, as it was returned on September 6, 1938.

All of these facts are alleged in the second count of the indictment, negativing prescription, and clearly show an interruption of prescription upon the face of the indictment itself, upon the face of the record itself, as the indictment is a part of the record.

"An assignment of errors is a written statement filed by the appellant in the appellate court, within ten days after the transcript is brought up, setting up some error of law apparent on the face of the record. It can not be based upon any error disclosed by the aid of the evidence taken in the case." Art. 560, Code of Crim. Procedure.

The State proved all of the essential allegations made in the second count of the indictment, negativing prescription, without objection from defendant.

We do not find it necessary to discuss further the second point raised in the assignment of errors, as to the overruling of the plea of former jeopardy, as that issue has been thoroughly reviewed in this opinion, and defendant does not allege, or pretend in the assignment of errors, that the overruling of the plea of former jeopardy is an error of law patent upon the face of the record.

The conviction and sentence appealed from by defendant are affirmed.

O'NIELL, C. J., concurs in the decree.

FOURNET, J., absent.

O'NIELL, Chief Justice (concurring in the decree).

If the first indictment against the defendant had been merely an indictment for the crime of entering a house in the nighttime without breaking, which is the crime defined in Section 854 of the Revised Statutes, the indictment would not have interrupted the prescription which would bar a prosecution for the capital crime of burglary. That crime is defined in Section 850 as the breaking and entering of a dwelling house in the nighttime, while armed with a dangerous weapon, and with intent to commit a crime, et cetera. But the first indictment against the defendant was intended to be and was in fact an indictment for the capital crime of burglary. The indictment contained every allegation essential to a valid indictment for the capital crime, except that the word "break" was omitted. For that reason the indictment was held to be an invalid indictment for the capital crime. But article 8 of the Code of Criminal Procedure, virtually, declares that an invalid indictment may interrupt prescription against the right of the State to prosecute, because the article declares that, if an indictment be quashed, annulled or set aside, the prescription shall begin from the time of the quashing, annulling or setting aside of the indictment. That means that, even though an indictment is defective or invalid, and is for that reason quashed, annulled or set aside, it has the effect of interrupting prescription until it is quashed, annulled or set aside.

The defendant's plea that he should not have been put in jeopardy of his life or liberty twice for the same offense is not well founded, because the guaranty in the Bill of Rights (in Section 9 of Article I of the Constitution of Louisiana) against the putting of a person's life or liberty in jeopardy twice for the same offense is qualified by the exception, "except on his

own application for a new trial, or where there is a mistrial, or a motion in arrest of judgment is sustained." On the previous conviction of the defendant in this case, a motion in arrest of judgment was sustained by the decree of this court. It may be conceded, for the sake of argument, that the defendant might have been tried and convicted legally of the crime of burglary defined in Section 854 of the Revised Statutes, under the indictment which this court held was not a valid indictment for the capital crime of burglary, defined in Section 850 of the Revised Statutes. But the defendant was not tried merely for the less serious crime, defined in Section 854. He was tried for the capital crime defined in Section 850, and was convicted of that crime, under an invalid indictment. After he was tried and convicted the first time, he did not take the verdict to be a valid conviction for the less serious crime of burglary, defined in Section 854 of the Revised Statutes. He insisted that the conviction was illegal because of his having been tried under the invalid indictment for the capital crime of burglary defined in Section 850. His being put in jeopardy of life or liberty twice for the same offense, therefore, comes within the exception stated in the Bill of Rights.

My opinion is that the defendant had the right to submit his plea of prescription to the jury after the plea was overruled by the judge. In the case of State v. Hayes, 162 La. 917, 922, 111 So. 327, it was held that a defendant had the right to submit a plea of prescription to the jury after the plea was overruled by the judge. To the same effect, see 8 R.C.L. 134, § 113. I concur, however, in the ruling that there is no merit in the defendant's Bill of Exceptions No. 3, complaining that he was not allowed to submit the plea of prescription to the jury, because, as a matter of fact, the judge did not deny the defendant his right to submit the plea of prescription to the jury. The defendant's attorney merely complained to the judge that his overruling of the plea of prescription prevented its being submitted to the jury. But the judge did not refuse to allow the plea to be submitted to the jury after he overruled it. As far as the record shows, the plea of prescription was submitted to the jury under the general issue. That is recognized in the declaration in the prevailing opinion that it was incumbent upon the State to prove beyond a reasonable doubt that the crime charged in the indictment was not prescribed, and that, for that purpose, the State offered and filed in evidence a certified copy of the original indictment, et cetera. When a plea of prescription in a criminal case is submitted to the judge, before a trial of the case on its merits, the burden of proof is on the defendant to show, by a preponderance of evidence, that the prosecution is barred by prescription. It was so held in State v. Posey, 157 La. 55, 101 So. 869, where the court expressly overruled two recent decisions and reinstated several previous decisions.

I do not subscribe to what is said in the prevailing opinion in this case on the subject of the admissibility of evidence of previous threats on the part of the victim

of a homicide, or of a physical attack. I adhere to the opinion, which I have expressed many times, that the question as to who was the aggressor in a fatal difficulty, in a case where the defendant on trial pleads self defense, is a question of fact on which depends the guilt or innocence of the person on trial, and is therefore a question for the jury to decide from all of the evidence in the case. That proposition seems to me so self-evident that my faith in it has not been shaken by the many decisions to the contrary, cited in the prevailing opinion in this case. The subject is discussed in the prevailing opinion by way of illustration only, and is otherwise not at all relevant to any issue in this case.