STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 KA 0474

STATE OF LOUISIANA

VERSUS

JUSTIN LEE WARNER

*Judgment Rendered:* **DEC 3 0 2020**

********

Appealed from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Suit No. 06-18-0722

The Honorable Beau Higginbotham, Judge Presiding

********

| | |
|---|---|
| Hillar C. Moore, III<br>District Attorney<br>Allison M. Rutzen<br>Assistant District Attorney<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee<br>State of Louisiana |
| | |
| Prentice L. White<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellant<br>Justin Lee Warner |

********

BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.

McClendon, J., Concurs.

**LANIER, J.**

The defendant, Justin Lee Warner, was charged by bill of information with simple burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2. He pled not guilty. After a trial by jury, he was found guilty as charged.[1] The trial court denied the defendant's combined motion for new trial and post-verdict judgment of acquittal. The trial court sentenced the defendant to six years imprisonment at hard labor, with one year to be served without the benefit of probation, parole, or suspension of sentence. The defendant now appeals, assigning as error the non-unanimous jury verdict and the sufficiency of the evidence. For the following reasons, we vacate the conviction and sentence.

## STATEMENT OF FACTS

On September 14, 2017, at about 2:00 p.m., the Baton Rouge Police Department (BRPD) received a complaint regarding a burglary in progress. Sergeant Ken Camallo, who was working as a BRPD patrol supervisor, was dispatched to an area near Hudson Square Apartments, where the suspect's vehicle was last seen. Upon arrival at the apartment complex, Sergeant Camallo, who testified at trial, made contact with the complainant, Michael Thompson. Sergeant Camallo was given a name and a general description of the suspect and his vehicle.

As Sergeant Camallo further testified at trial, he proceeded to the apartment where the offense allegedly took place, apartment number 255, on the second floor. There was no sign of a forced entry and the apartment key was inside the deadbolt of the partially open apartment door. Sergeant Camallo entered a children's bedroom and observed an area where it appeared that a television had been disconnected from the cable-connecting cord. Sergeant Camallo further testified

---

[1] As later discussed herein in addressing assignment of error number one, eleven of the twelve jurors found the defendant guilty as charged. Thus, the verdict was non-unanimous.

that the apartment tenant confirmed that a television was missing from the observed area of the child's bedroom.

Sergeant Camallo also spoke to other individuals at the scene, including the apartment manager, Akelia Stampley, and compiled a police report regarding the incident. According to Stampley, who also testified at trial, the company with which she had a standing contract to provide on-site repairs, identified as Blue Water, subcontracted a certified electrician to repair the air conditioning unit in the apartment at issue. Prior to selecting a subcontractor, the Blue Water representative who Stampley routinely dealt with, identified as "Mike,"[2] introduced Stampley to the defendant, a prospective subcontractor for the job.

On the day in question, the defendant and an unidentified individual came to Stampley to get the key to the apartment, indicating that he was going to do the air conditioning repair job. About fifteen to twenty minutes later, Stampley learned that some items had been stolen from the apartment and reported it to the police. Keitra Jackson, the tenant of the apartment at the time of the offense, testified at trial and confirmed that prior to the date in question, she reported to the front office that her air conditioning and heater were not working. On the day of the offense, when she arrived at her apartment at about 2:30 p.m., she noticed that her son's television, PlayStation controllers, and games were missing and reported it to the property manager.

BRPD Detective Eric Douglas, the lead detective on the instant burglary case, contacted the individuals listed in Sergeant Camallo's initial report and ultimately obtained a warrant for the defendant's arrest. As a result of the warrant, the defendant was arrested in another parish and transported to East Baton Rouge

---

[2] While Stampley testified that she knew the Blue Water representative simply as "Mike," during cross-examination, at trial the defense attorney referred to him as Michael Thompson, the complainant. Thompson did not testify at trial.

Parish Prison. After being informed of his **Miranda**[3] rights, the defendant waived his rights and agreed to give an unrecorded statement. According to Detective Douglas, the defendant indicated that he did not receive the contract for the repair job, that he had only gone to the apartment that day to retrieve his tools, and that he left the key in the apartment door. The defendant further relayed that as he was driving off, he heard his co-worker yelling for him to stop, and he stopped his truck. The defendant stated that his co-worker had a television with him at the time but told the defendant that he did not steal it. The defendant stated that he allowed his co-worker to get into the truck with the television.

## SUFFICIENCY OF THE EVIDENCE

In assignment of error number two, the defendant contends that he presented an undisputed argument of innocence. He specifically claims: (1) that he was on the premises of Hudson Square Apartments for the sole purpose of presenting a bid for the repair project; (2) that it was not his intent to take any items; and, (3) that it was his unnamed associate/co-worker who had the specific intent to commit a felony and took the television. He further argues that the State's entire case rested on circumstantial evidence from Stampley, who was not privy to any of the conversations between the defendant and Thompson. The defendant notes that Thompson was the on-duty contractor who made all project decisions. The defendant also notes that Stampley was unaware of the decision to hire or not hire the defendant when she gave him the key to the apartment. Noting that Thompson did not testify as to whether or not the defendant's bid was selected and as to whether or not the defendant had authority to enter the apartment, the defendant

---

[3] **Miranda v. Arizona**, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

4

concludes that the jury was left with no other choice but to make "huge inferences" in order to reach a guilty verdict.

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The sufficiency claim is reviewed first because the accused may be entitled to an acquittal under **Hudson v. Louisiana**, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with **Jackson v. Virginia**, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. **State v. Hearold**, 603 So.2d 731, 734 (La. 1992). See also La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. When the entirety of the evidence is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot. See **Hearold**, 603 So.2d at 734.

On the other hand, when the entirety of the evidence is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. See **Hearold**, 603 So.2d at 734. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal. **Hearold**, 603 So.2d at 734; **State v. Major**, 2019-0621 (La. App. 1st Cir. 11/15/19), 290 So.3d 1205, 1209, writ denied, 2020-00286 (La. 7/31/20), 300 So.3d 398.

The **Jackson** standard of review, incorporated in La. C.Cr.P. art. 821, is an objective standard for testing the overall evidence, both direct and circumstantial,

5

for reasonable doubt. **State v. Patorno**, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder, in order to convict, must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **State v. Dyson**, 2016-1571 (La. App. 1st Cir. 6/2/17), 222 So.3d 220, 228, writ denied, 2017-1399 (La. 6/15/18), 257 So.3d 685.

Simple burglary of an inhabited dwelling is defined by La. R.S. 14:62.2, as the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein. Thus, the accused must have the specific intent to commit either a felony or a theft[4] at the time of the unauthorized entry. **State v. Moore**, 2011-0422 (La. App. 1st Cir. 9/14/11), 2011 WL 4484383, at *6, writ granted, reversed in part on other grounds, 2012-0102 (La. 5/25/12), 90 So.3d 384 (per curiam), and writ denied, 2011-2476 (La. 6/22/12), 90 So.3d 455. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1).

Specific intent is an ultimate legal conclusion to be resolved by the factfinder. Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from

---

[4] Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential. La. R.S. 14:67(A).

circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. **State v. Coleman**, 2017-1045 (La. App. 1st Cir. 4/13/18), 249 So.3d 872, 877, writ denied, 2018-0830 (La. 2/18/19), 263 So.3d 1155. Conversely, a defendant's confession is direct evidence, for it is an acknowledgment of guilt for which no inference need be drawn. **State v. Landry**, 2019-0486 (La. App. 1st Cir. 2/21/20), 297 So.3d 8, 15. See also La. R.S. 15:449.

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24. However, the defendant's mere presence at the scene is not enough to "concern" him in the crime. **State v. Moore**, 2006-1979 (La. App. 1st Cir. 3/28/07), 2007 WL 914637, at *4. Only those persons who knowingly participate in the planning or execution of a crime are principals. Further, an individual may be convicted as a principal only for those crimes for which he personally has the requisite mental state. The State may prove a defendant guilty by showing that he served as a principal to the crime by aiding and abetting another. **State v. Calloway**, 2015-0191 (La. App. 1st Cir. 9/21/15), 2015 WL 5547564, at *2, writ denied, 2015-1844 (La. 11/7/16), 208 So.3d 896. In this case, the defendant does not deny entering apartment number 255, but he contends that it was his unnamed associate/co-worker who had the specific intent to commit a theft in the apartment, not the defendant.

The State presented four witnesses at trial, Stampley, Jackson, Detective Douglas, and Sergeant Camallo. Stampley testified that prior to the offense, she met with the defendant and Thompson and left the meeting under the impression that the defendant had the repair job. She further testified that on the day in question, the defendant came to get the apartment key "to start on the work."

7

When specifically asked if the defendant told her that he got the contract and was going to do the work, Stampley stated, "Correct."

Stampley observed that when she gave the key to the defendant, the other individual, described as a black male in his early twenties, was dressed in "joggers and some Nike slides." Stampley testified that the individual did not look like he was about to perform electrical work. Nonetheless, after giving the defendant the key, Stampley did not go to the apartment to monitor them or check on the work. Twenty minutes later, she realized that someone had taken items from the apartment, including the television. Jackson testified that she did not give anyone permission to enter her apartment and take her belongings.

During the defendant's post-arrest interview, he denied stealing the television. When Detective Douglas asked why he allowed his associate or co-worker to enter his truck with the television, the defendant told Detective Douglas that he was upset because he did not get the contract to do the repairs for the apartment. Detective Douglas testified that the information elicited from the defendant during the interview was consistent with Sergeant Camallo's initial report and statements Detective Douglas received from the witnesses listed therein.

An entry with undeclared felonious intent is not "unauthorized" if it is with the knowing and voluntary consent, express or implied, of the owner or occupant of the premises. **State v. Smith**, 98-2078 (La. 10/29/99), 748 So.2d 1139, 1143 (per curiam) (citing **State v. Lozier**, 375 So.2d 1333, 1336 (La. 1979)). In the case of a private dwelling, a person must have the consent of an occupant or an occupant's agent to constitute a defense to an "unauthorized entry." **State v. Ortiz**, 96-1609 (La. 10/21/97), 701 So.2d 922, 931, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). This consent must be given by a person with the authority and capacity to consent. **Id.**, citing **Lozier**, 375 So.2d at 1336. However, even if a person has lawful access to enter a premises himself, he is not

empowered to grant lawful authority to another to enter for the purpose of committing a felony. **Ortiz**, 701 So.2d at 931-932. Although a servant may have authority to enter a residence, where he conspires with another and allows entry so that his co-conspirator can commit a felony, both are guilty of burglary. **Id.**, at 932, citing **State v. Gendusa**, 193 La. 59, 81, 190 So. 332, 339 (1939).

We note that a finding of purposeful misrepresentation reasonably raises the inference of a "guilty mind." Lying has been recognized as indicative of an awareness of wrongdoing. **State v. Pinestraw**, 2016-0553 (La. App. 1st Cir. 10/31/16), 2016 WL 6427714, at *4. Herein, the defendant and his associate were together when the defendant obtained the key for apartment number 255. Stampley gave the key to the defendant, not his associate. Stampley repeatedly testified that when the defendant came to get the key, he told her that he had the repair job. However, the defendant inconsistently informed Detective Douglas that he was upset at the time about not getting the repair job. Within twenty minutes after the defendant obtained the key, the items were missing from the apartment.

As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the fact finder, is sufficient to support a factual conclusion. It is the fact finder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. **Coleman**, 249 So.3d at 878. Based on the circumstances presented herein, a rational trier of fact could have found that the entry of the apartment by the defendant and associate was unauthorized, as the defendant misrepresented facts in order to gain entry and, thereby, prevented Stampley from having a sufficient understanding of the circumstances of the entry to validly consent. See **Lozier**, 375 So.2d at 1336.

The resolution of factual matters, which depends upon a determination of the credibility of the witnesses, involves the weight of the evidence, not its sufficiency. See **State v. Lee**, 2010-2164 (La. App. 1st Cir. 6/10/11), 2011 WL 3427144, at *3, writ denied, 2011-1440 (La. 12/16/11), 76 So.3d 1201. In this case, the jury was instructed on the law of principals. In a burglary prosecution, it is not necessary to prove that one charged as a principal made an unauthorized entry. It is sufficient to show that he aided and abetted one who entered without permission. **State v. Rogers**, 428 So.2d 932, 934 (La. App. 1st Cir. 1983).

Even accepting the defendant's version of the facts, the defendant knew his associate was in possession of the stolen television when he entered the defendant's truck. It is not necessary that the State prove that the defendant personally removed the television or any other stolen items. The State only had to prove that the defendant was "concerned in the commission of a crime" and had the requisite specific intent in order for him to be found guilty as a principal to the unauthorized entry of the apartment.

Based on the circumstances, we find that the jury could have reasonably inferred that the defendant had the specific intent to commit theft at the time that he misrepresented the facts in order to gain entry to the apartment. Viewing the evidence in the light most favorable to the prosecution, we are convinced that a rational trier of fact could find that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of simple burglary of inhabited dwelling. Thus, the defendant is not entitled to an acquittal. Assignment of error number two lacks merit.

**NON-UNANIMOUS JURY VERDICT**

In assignment of error number one, the defendant notes that his conviction was non-unanimous and that his case is currently pending on direct review. The defendant argues that in light of **Ramos v. Louisiana**, 590 U.S. ___, 140 S.Ct.

10

1390, 206 L.Ed.2d 583 (2020), the trial court's acceptance of the jury's non-unanimous verdict is both prejudicial and reversible.[5] Accordingly, the defendant requests that this court vacate and set aside his conviction and sentence for simple burglary of an inhabited dwelling.

In the recent decision of **Ramos**, 140 S.Ct. at 1397, the United States Supreme Court overruled **Apodaca v. Oregon**, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), and held that the right to a jury trial under the Sixth Amendment of the United States Constitution, incorporated against the States by way of the Fourteenth Amendment of the United States Constitution, requires a unanimous verdict to convict a defendant of a serious offense. Thus, as the **Ramos** Court declared non-unanimous jury verdicts unconstitutional, the defendant may raise in this appeal, a challenge to his conviction by a non-unanimous jury verdict rendered pursuant to La. C.Cr.P. art. 782(A).

Further, the holding of **Ramos** applies to those defendants convicted of felonies by non-unanimous verdicts whose cases are still pending on direct appeal. See **Ramos**, 140 S.Ct. at 1406; **Griffith v. Kentucky**, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987); **State v. Williams**, 2020-00473 (La. 9/8/20), 301 So.3d 14 (per curiam). In the instant case, a polling of the jurors indicated that the defendant was convicted by a vote of eleven to one. Accordingly, as the verdict was non-unanimous, we hereby set aside the conviction and sentence and remand the matter to the trial court for further proceedings. Thus, we find merit in assignment of error number one.

**CONVICTION AND SENTENCE VACATED; REMANDED.**

---

[5] During the trial, the defendant filed a "Motion to Uphold Defendant's Constitutional Right to a Unanimous Jury Verdict," and in his combined post-trial motion, the defendant likewise challenged his conviction by a non-unanimous jury verdict.